## GEORGE W. GREEN v. UNITED STATES.

No. 593, Ind. T.   Opinion Filed March 30, 1909.

(101 Pac. 112.)

1.   **HOMICIDE— Evidence — Admissibility of Threats—Self-Defense.** It was error for the court below to exclude the testimony of the wife of deceased, by which the accused offered to prove that, a short time before the killing of deceased, the deceased said, "If Mrs. Mahoney (daughter of accused) ever interferes with you again, if you don't whip her I will whip you and will then attend to the man" (meaning defendant), for the reason the defense was that of self-defense, and the accused was entitled to the benefit, if any there was, to be derived from the threat of the deceased against him.

2.   **SAME—Instructions—Malice Aforethought.** In a prosecution for murder it was error, in attempting to define the term "malice aforethought," to charge the jury that "if the, thought came to the mind (of the defendant), 'I will kill,' and he did kill immediately after that, it is thought of beforehand; that is, 'malice aforethought,'" since it made the conscious act of the defendant malicious, regardless of the fact as to whether he was acting in self-defense or otherwise.

3.   **SAME—Instructions—Self-Defense.** It was error for the court to refuse to instruct the jury in this case: "What is or is not an overt action—that is, what act upon the part of the person slain will justify the person taking his life—varies with the circumstances of each particular case. Under some circumstances the slightest movement may justify instant action on the part of the person threatened with danger, upon the ground of reasonable apprehension of danger. Under other circumstances this might not be true, and it is for the jury, viewing the facts and circumstances in evidence from the defendant's standpoint, to determine how this may be in each case;" and such a requested and refused instruction is not cured by the general instruction in the charge that: "A man has a right to protect himself against onslaught of another person, but he cannot go any further than resist the force by sufficient force to stop it. The defendant would not have the right, because there was hard feelings against each other, or because he had heard threats from the deceased, to shoot the deceased down, and the deceased not near the defendant, unless the defendant, as a reasonable person, believed or had a right to believe that the deceased was armed, and then he would not have the right to shoot deceased

unless he was in the very act, as it appeared to him, of shooting the defendant."

(Syllabus by the Court.)

On rehearing. Judgment below reversed and remanded.

For former opinion, see 104 S. W. 1159.

On the 6th day of November, 1903, the grand jury of the United States Court for the Central District of the Indian Territory, sitting at Durant, returned an indictment against appellant, G. W. Green, charging him with the murder of one Martin Liston. The defendant entered his plea of not guilty, and, on the 9th day of March, 1904, the venue of the cause was changed to the United States Court for the Central District, sitting at Atoka. On October 20, 1904, the defendant was found guilty of murder, without capital punishment. Motion for a new trial was overruled, and an appeal, in due time, was prosecuted to the United States Court of Appeals for the Indian Territory, where, on the 26th day of September, 1907, the judgment of the lower court was affirmed. A petition for a rehearing was filed, which was pending when the Indian Territory was admitted as a portion of the state of Oklahoma. On consideration by this court a rehearing was ordered.

The testimony shows that the defendant and deceased were neighbors, the houses in which they resided being only a few hundred feet apart. Near their houses was a tank of water which both used for watering their domestic animals. On the 14th day of July, 1903, they met at this tank, where the deceased received a gunshot wound at the hands of the defendant, from the effects of which he instantly died. The testimony of the prosecution tended to show an unprovoked killing. Defendant testified that the deceased had made threats against his life, and that, at the time he fired the shot that killed, the deceased was making towards him such hostile demonstration as led him to believe that the deceased was then about to take his life. A fuller statement of the testimony is deemed unnecessary.

*Williams & Utterback,* and *J. G. Ralls,* for appellant.—

On competency of testimony of deceased's wife to prove threats by deceased: *Logan v. State* 17 Tex. App. 50; *People v. Powell,* 87 Cal. 348; *Russell v. State,* 11 Tex. Cr. R. 291; *Wilson v. State,* 18 Tex. App. 585.

On requested instructions relating to threats and self defense: *Allison v. U. S.,* 160 U. S. 395; *Watkins v. U. S.,* 3 Ind. T. 281; *Pridgen v. State,* 37 Tex.; *Bell v. State,* 20 Tex.; *Phipps v. State,* 34 Tex. Cr. R. 565.

On definition of malice aforethought: *State v. Robbins,* 66 Me. 324; *Com. v. Chance,* 174 Mass. 245; *Carr v. State,* 23 Neb. 749; *Crook v. State,* 27 Tex. App. 242; *Ainsworth v. State,* 29 Tex. App. 604; *Mills v. U. S.,* 164 U. S. 584.

*Chas. West,* Atty Gen., *J. H. Wilkins,* and *Frank Lee,* for the United States.—

On exclusion of wife's testimony as to threats made by deceased: *Lingo v. State,* 29 Ga. 470; *People v. Powell,* 87 Cal. 348; *State v. Cross,* 68 Iowa, 180; *State v. Gray,* 18 Mont. 51; *Pettis v. State* (Tex.) 81 S. W. 312.

On definition of malice aforethought: *Allen v. U. S.,* 164 U. S. 492; *King v. State* (Tenn.) 20 S. W. 169; Bouvier's Law Dic. (Rawle's Rev.); *Owens v. U. S.,* 130 Fed. 279.

CRUCE, SPECIAL JUDGE (after stating the facts as above). The first assignment of error challenges the action of the trial court in excluding certain testimony which the defendant offered to prove to the jury. The prosecution placed upon the witness stand Mrs. Lettie Liston, the wife of the deceased, by whom the defendant offered to prove that, a short time before the killing, she had told the wife of the defendant to tell the defendant that her husband, the deceased, had said "If Mrs. Mahoney (daughter of defendant) ever interferes with you again, if you don't whip her I will whip you and will then attend to the man"—meaning the defendant. This testimony was excluded upon the ground that any trouble between the wife of the deceased and the daughter of the defendant bore no proper relation to the case on trial, al-

though it culminated in a threat on the part of the deceased to do the defendant bodily harm.

We cannot agree with this contention. The testimony of the defendant clearly presented the issue of self-defense. The prosecution contended that the shooting of the deceased was a brutal and unprovoked murder. The testimony of the defendant was that he shot only in defense of his life. This direct conflict in the testimony rendered competent any evidence that would shed any light upon the transactions occurring at the very moment of the fatal shooting. The defendant, while on the witness stand, testified that a short time before the killing he had sent his wife over to see the wife of the deceased, for the purpose of composing the troubles that existed between the members of the two families. That his wife came back and told him that "the wife of the deceased had informed her that the deceased had said that if she, Mrs. Liston, did not whip the daughter of the defendant, he, deceased, would whip her, the witness, and he would then settle with the defendant." This was a remarkable statement, and coming from the mouth of the defendant, liable to be received with suspicion. If true, it was an important fact in the defendant's favor. It expressed a violent and malignant state of feeling, and, if in fact such a threat was communicated to the defendant, it must have had a profound impression upon his mind. Receiving such information, the defendant might properly have reasoned that nothing but a deadly hatred towards him upon the part of the deceased would cause him to offer his innocent wife the unpleasant alternative of taking into her own hands the settling of the family difficulties, or, herself, receiving at his hands a brutal chastisement. The very fact that the statement was an unusual one— difficult to be believed—made it the more important that the defendant be permitted to show its truth, if in his power. The testimony of the witness, Mrs. Liston, plainly showed that her feelings were hostile to the defendant. It may be that this statement, coming from the defendant, would be disregarded by the jury as an unbelievable statement. If, however, it had been sup-

ported by the testimony of the wife of the deceased, it would, in view of her manifest hostility toward the defendant, in all probability have been received by the jury as the truth. We are not permitted to speculate as to what effect the admission of this testimony might have had upon the minds of the jury. Whether such threat was actually made by the deceased is immaterial. One of the material questions in the case was, "What was in the mind of the defendant at the time he fired the fatal shot, and how did things then present themselves to him?" If, as the defendant testified, the deceased was making a hostile demonstration toward him at the time he fired, and if, at that time, he remembered the threat which he claimed was communicated to him by his wife, this recollection must have been a powerful mental factor in impelling him to decide as to what course he would pursue in the face of such threatened danger. Whether such threat was really conveyed to him, and what part it played in determining his conduct at the time of the fatal difficulty, were matters wholly for the jury. It is sufficient to say that, under the law, the defendant was entitled to this testimony.

Second.. The defendant requested the court to give the following charge, which was refused:

"What is or is not an overt action—that is, what act upon the part of the person slain will justify the person taking his life —varies with the circumstances of each particular case. Under some circumstances the slightest movement may justify instant action on the part of the person threatened with danger, upon the ground of reasonable apprehension of danger. Under other circumstances this might not be true, and it is for the jury, viewing the facts and circumstances in evidence from the defendant's standpoint, to determine how this may be in each case."

It is conceded that the requested instruction was applicable to the facts of the case, and that it correctly stated the law. It is contended, however, that this phase of the case was properly covered by the following paragraph from the court's charge:

"A man has a right to protect himself against onslaught of another person, but he cannot go any further than to resist the force by sufficient force to stop it. The defendant would not have

the right because there was hard feelings against each other, or because he had heard threats from the deceased, to shoot the deceased down, to kill Liston and Liston away from him, Liston not where he was near him, unless the defendant as a reasonable person believed or had a right to believe under the circumstances that Liston was armed; and then he would not have the right to shoot Liston unless Liston was in the very act, as it appeared to him, of shooting the defendant. * * * The deceased would have to be near enough and would have to do something toward the injury of the defendant to justify the defendant in taking his life."

We do not so read the charge given. It is negative in form, and as this court has heretofore had occasion to state in the case of *Price v. State,* 1 Okla. Cr. 358, 98 Pac. 447, it tells the jury of the conditions under which the defendant would not be justified, but it nowhere tells the jury, in a clear and affirmative manner, the conditions under which the defendant would be justified in acting upon the appearances of danger. Both sides of the question should have been fully and fairly presented to the jury. The requested charge, in plain and unambiguous language, in an affirmative way, correctly declares the conditions under which the defendant might act when threatened with danger. It is copied literally from the decision of the Supreme Court of the United States in the case of *Allison v. United States,* 160 U. S. 203, 16 Sup. Ct. 252, 40 L. Ed. 395, and received the approval of this court in the case just referred to.

The charge of the court that the defendant had not the right to shoot Liston, "unless Liston was in the very act, as it appeared to him, of shooting the defendant," is, to say the least, misleading and subject to different constructions. What the court meant by the use of the words, "in the very act * * * of shooting the defendant," is uncertain, and the jury may very naturally have arrived at different conclusions as to what was the meaning of such language. Would the attempted drawing of a weapon be included within this language? Or must the deceased have been, as the language seems to imply, in the very act of discharging the weapon already drawn? The defendant had the

right to act upon the appearances of danger as they were indicated to him at the time. He was not bound to wait until the deceased was in the very act of shooting him, but he had the right to act upon any other hostile demonstration, upon the part of the deceased, which indicated to the defendant that the deceased was then about to take his life. If, for example, a loaded weapon had lain upon the ground within easy reach of the deceased, any effort upon his part to secure the same, with an evident purpose to discharge it upon the defendant, would have justified instant action upon the part of the defendant. Yet clearly such conduct would not have been embraced within the language of the court's charge. Neither was the defendant, under the law, confined to a defense against an impending attack upon the part of the deceased which had for its purpose the shooting of the defendant. The defendant had the right, under the law, to defend himself against any character of threatened danger, whether it was sought to be accomplished by the use of pistol, knife, or any other kind of deadly weapon. But it is useless to pursue the discussion of this branch of the case further. It is manifest that the charge of the learned trial judge did not correctly and sufficiently cover this phase of the case, and that harmful error was committed in the refusal of the requested instructions.

Third. The fourth assignment of error attacks the trial court's definition of the term "malice aforethought," which was couched in the following language: "Now, to constitute murder, there must be malice aforethought; that means in law that it has been thought of beforehand. So, to constitute murder, the evidence must show that the defendant thought of it beforehand, but, as to the time, it is immaterial whether it was thought of an hour beforehand, or a day beforehand, or a minute beforehand. If the thought came to the mind, 'I will kill,' and he did kill immediately after that, it is thought of beforehand; that is, malice aforethought." This definition entirely overlooks the fact that a killing may be intentional and yet not malicious. If the thought. "I will kill," precedes the act, it may properly be characterized

as "aforethought," but not "malice aforethought." This charge practically withdrew from the jury the right to convict the defendant of manslaughter or to acquit. The defendant's own testimony showed that, before he fired, the thought, "I will kill," was actively controlling his conduct; so that, if the jury believed his testimony, and followed the instructions of the court, there was nothing left except to convict him of the offense of murder. A proper consideration of the charge renders it clear that it does not correctly state the law.

Fourth. Over the objection of the defendant, the court charged the jury as follows:

"The defendant goes on the witness stand and his testimony is weighed by you by the same rules as the testimony of any other witness is weighed. You take into consideration the reasonableness of his statement, and you take into consideration the interest he has in the result of his trial."

This charge should not have been given. The most favorable view that may be taken of it is that it was but a comment upon the weight of the testimony—a thing our statute says must not be done. It was entirely proper for the prosecuting officer, in discussing the weight the jury should give the defendant's testimony, to direct their attention to the fact that he had the gravest possible interest at stake, and that the most powerful motives were back of his testimony. It was not, however, the province of the court to add to the burdens of the defendant the controlling influence that naturally attached to any official utterance it might make, by indicating that the defendant had great interests at stake, and that his testimony was therefore necessarily to be regarded with suspicion.

Other alleged errors have been discussed in the briefs, but as they are not liable to occur upon a second trial, it is not deemed necessary that they should receive present consideration.

For the reasons herein stated, the judgment of the lower court is reveresd, and this cause remanded.

BAKER and DOYLE, JUDGES, concur.

The Presiding Judge of this court, Hon. Henry M. Furman, having been of counsel in the case being thereby disqualified as one of the Judges to hear and determine the same, and this fact having been duly certified to Gov. Haskell, he thereupon appointed Hon. A. C. Cruce as special judge of the Criminal Court of Appeals for the trial and determination of this case. Mr. Cruce having duly qualified as special judge, the case was submitted upon briefs by both parties.