DAN PRICE v. UNITED STATES.

No. 914, Ind. T.   Opinion Filed June 4, 1909.

(101 Pac. 1036.)

1.   EVIDENCE—Expert Evidence.  It is error to allow physicians to testify to their opinions, as experts, as to the position of the arm of the deceased at the time that he received the fatal wound, which opinions are based upon the range of the bullet after it entered the body of the deceased.

2.   INSTRUCTIONS—Weight of Evidence.  It is error for the court to single the defendant out and instruct the jury upon the weight of his evidence.

3.   APPEAL—Briefs.  Counsel for the defendant in their briefs must clearly present the grounds upon which they rely for a reversal.

(Syllabus by the Court.)

*Appeal from the United States Court for the Central District of the Indian Territory; T. C. Humphries, Judge.*

Dan Price was convicted of murder, and appeals. Reversed and remanded.

On November 13, 1906, Dan Price (hereinafter called the defendant) was indicted by the grand jury of the Central District of the United States Court for the Indian Territory, sitting at Atoka, for the murder of one Naith Dillingham, alleged to have been committed on the 3rd day of July, 1906. The defendant was arraigned, and pleaded not guilty. On the 26th day of April, 1907, the defendant was placed on trial upon said indictment, and was by the jury found guilty of the offense of manslaughter. A motion for a new trial was made by the defendant, and was overruled by the court, to which the defendant reserved an exception. Sentence was then pronounced by the court upon the verdict of the jury. Defendant prayed an appeal, as provided by law. An appeal was taken to the United States Court of Appeals for the Indian Territory. Upon the incoming of statehood this case was

2 Cr.—29

transferred, as directed by law, to the Supreme Court of the state of Oklahoma; and, upon the creation of the Criminal Court of Appeals, the case was transferred to this court, and is now regularly before us for decision.

For a proper understanding of one of the questions involved, a brief statement of the evidence is necessary. On the evening of the homicide the deceased received a box containing several bottles of whisky and became intoxicated. The undisputed fact is that the deceased fired a shot in his own home, which caused the wife of deceased to leave home in great fear of her life. She remained at the home of a neighbor until after her husband had been shot by the defendant, and only returned home when she became satisfied that he was powerless to harm her. The defendant was in the employ of the deceased. There had been no previous trouble or ill will between the defendant and the deceased. To make a long story short, the evidence tended to show that, after the wife of the deceased had fled from her home, the deceased with two bottles of whisky in his left hand and a pistol in his right hand, went to where the defendant was at the barn, and abused and threatened the defendant and assaulted him with the pistol. The defendant procured a pistol, and returned to the discharge of his duties in caring for the stock of the deceased. He states that he had drawn a bucket of water, and was going to give it to an animal of the deceased, when the deceased approached him and attempted to shoot him, and snapped his pistol at the defendant, and that he shot the deceased in self-defense. When others came to where the deceased had fallen, they found two bottles of whisky on the ground by him, and the pistol of deceased was within a few inches of his right hand. There were two freshly fired cartridges in the pistol, and one loaded cartridge, which indicated it had been snapped in an attempt to fire it. The state attempted to prove that the statement made by the defendant that the deceased had attempted to shoot him at the time of the homicide was false, by the introduction of the testimony of two physicians as to their opinion as to the position of the arm of the

deceased at the time he received the fatal wound, based upon the range of the bullet after it entered his body. The killing occurred after dark, and no witness, except the defendant, testified to the position of either party at the time.

*Ralls Bros.,* for appellant.—On admissibility of expert evidence: *Wilson v. U. S.,* 5 Ind. T. R. 610; *Brown v. State,* 55 Ark. 593; *Cooper v. State,* 23 Tex, 331; *People v. Smith,* 29 Pac. 64; *Williams v. State,* 17 S. W. 1071.

*Charles West,* Atty. Gen., and *E. G. Spilman,* Asst. Atty. Gen., for the State.

FURMAN, PRESIDING JUDGE. (after stating the facts as above). First. The second and third assignments of error relate to the same subject-matter, and are as follows:

"(2) The court erred in overruling the objections of the defendant to the evidence of the witness Dr. G. R. Ellis, who was a witness for the prosecution, and which evidence was offered by the prosecution and permitted to go to the jury, and was as follows, to wit: 'Q. What would it indicate when a probe could not be introduced into the wound with the arm in that position, but would be with the arm lying against the body—what would that indicate at the time the wound was inflicted? A. That would indicate that the arm was down to the side when the wound was inflicted. To which question the defendant objected for the reason that said question called for the opinion of the doctor as to matters to be determined by the jury, and which matters the jury were as entitled to determine as the doctor.' (3) The court erred in overruling the objections of the defendant to the evidence of E. L. Mead, a witness for the prosecution, which evidence was offered by the prosecution, and was permitted to go to the jury, and was as follows, to wit: 'Q. If a probe would not enter when the arm was in this position, horizontal to the body, but would enter when the arm was lying against the body, what would that indicate as to the position of the arm when the wound was inflicted? A. The arm would necessarily be down, it would have to be down. Q. It would necessarily be down? A. Yes, sir; it would have to be down. To each of which questions the defendant objected, for the reason that the said question called for a matter of opinion that was exclusively for the jury to determine.'"

Medical science does not undertake to decide what range a bullet, fired from a gun or pistol, will take after coming in contact with, or entering, the human body. The reports of army surgeons and of army hospitals prove that there is no rule upon this subject. They present the most astonishing, contradictory, and apparently impossible results. Therefore it has been uniformly held by the courts that this is not a proper subject for expert evidence. From this it necessarily follows that a physician should not be permitted to testify as an expert to the position of the body of the deceased when the wound was received, based upon the range of the bullet after it entered his body. This is a matter of speculation, with reference to which the opinion of one man is as good as that of another. It was entirely proper for the physician to describe fully the location, character, and range of the wound, but it was error to permit the physicians to go further and give their opinion as to the position of the arm of the deceased at the time the fatal wound was received. But it is not every error in the admission or rejection of testimony which constitutes ground for the reversal of a conviction. For our views on this question, where the improper admission of expert evidence was held to constitute harmless error, see *Byars v. Territory*, 1 Okla. Cr. 677, 100 Pac. 261.

The pivotal question in this case was the position of the arm of the deceased at the time that the defendant fired the fatal shot. If it was hanging down by his side, then the jury would be authorized to believe that the defendant has testified falsely, as to the most material point in his defense, and, believing this, they would be bound to convict him. The issue was clear-cut and decisive of the case.

We have a case by the Supreme Court of California (*People v. Smith*, 93 Cal. 445, 29 Pac. 64), which so clearly expresses our views as to the injurious effects of this testimony that we shall quote and adopt it in full. In that case the court, speaking through Justice De Haven, said:

"The defendant was charged with the crime of murder, and

was convicted of manslaughter. The defendant was himself shot by the deceased during the difficulty which resulted in the homicide, and it was a contested question upon the trial as to whether the defendant or the deceased fired first, the contention of the defendant being that he acted in self-defense, and did not shoot until after he himself was wounded; and, in the determination of this question, it became material to ascertain the position in which the defendant was at the time when he was shot. Upon the trial Dr. Hayden, a physician and surgeon, was called as a witness on behalf of the people, and was asked: 'Will you state, if you can, from your examination of this man's arm and your familiarity with gunshot wounds, if you are familiar with them, in what position, in your judgment, this man's arm was at the time that wound was received?' The question was objected to by defendant as incompetent, which objection was overruled, and the witness in giving his opinion stated that the defendant when shot was in one of two positions: First, standing with his side towards the discharged weapon, with the forearm flexed almost to a right angle to the upper arm, and the arm and elbow curved in front of, and well towards, the right side of the trunk, the trunk being inclined to the right of a perpendicular; or, second, 'the arm may have been only partially flexed in the upper arm, and hanging at the side, the wounded party having his back towards the party firing the shot.' But the general tenor of his testimony was to the effect that it was his opinion rather that the wound was received while the defendant was in this latter position. The court erred in the admission of this evidence. The subject-matter of the inquiry was not one in relation to which the opinion of an expert can be properly received. The position of the wound being given, and the course taken by the bullet known, the jury was fully as competent to determine the relative positions of the parties to the difficulty as was the witness. *Kennedy v. People,* 39 N. Y. 245; *Cooper v. State,* 23 Tex. 331; *People v. Westlake,* 62 Cal. 303.

"Nor can we agree with the Attorney General and associate counsel for the people that the admission of this incompetent evidence was a harmless error, and therefore without prejudice to the appellant. It went to sustain the theory of the people in relation to the pivotal point in the case and at the same time to discredit the testimony of the defendant. The defendant testified, in effect, that he did not draw his weapon, or fire, until after he had been shot by the deceased; that after firing the first time he

continued to face the deceased, at the same time backing to and against the door, and, while thus backing, he shot at the deceased again. On the other hand, the theory of the prosecution seems to have been that the defendant fired the first shot, and then turned and ran, and, while running towards the door, was shot by the deceased; and, in this connection, Brown, a witness for the people, who was present and engaged in the difficulty, and was himself knocked down by the defendant, testified: 'I don't know who drew his pistol first. I know that during the shooting Mr. Smith started to run, and ran fast. Q. Did he turn his back, or back out? A. Turned his back.' If the testimony of this witness is true, then the deceased must have received his mortal wound before the defendant turned his back upon him and started to run away; and, if the defendant was shot, as Dr. Hayden seems to think more probable, while his arm was hanging down by his side, and his back turned towards the deceased, the inference would be that he was himself shot while running away, in the manner described by the witness Brown, and that the testimony of the defendant that he did not fire his weapon until after he was himself shot was therefore untrue. In this state of the case we do not think it can be said with any certainty that this incompetent evidence did not have any influence upon the minds of the jurors in reaching a verdict; and, for the error in admitting it, the judgment must be reversed. Judgment and order reversed."

We, therefore, hold that the admission of the testimony complained of under the second and third assignments of error was injurious to the defendant, and that for this cause the conviction of defendant was illegal.

Second. There are 15 assignments of error, but the second and third assignments are the only ones so presented in the brief as to call for the judgment of this court. We repeat what we have often heretofore said with reference to the manner of presenting questions to this court for review: Counsel must clearly point out the alleged errors upon which they rely, and must give this court the benefit of the arguments and authorities which support their contentions, or this court will treat their assignments as abandoned unless they relate to fundamental questions. But in view of the fact that this case will probably be

tried again, we desire to say that we do not approve the action of the trial court in singling out the defendant as a witness, and charging upon the weight of his evidence. For our views upon this question, see *Green v. United States,* reported in this volume, 101 Pac. 112; *Fletcher v. State,* reported in this volume, 101 Pac. 599; *Banks v. State,* reported in this volume, 101 Pac. 610.

For error in permitting experts to give their opinion as to the position of the arm of the deceased at the time that the fatal shot was fired, the conviction of the defendant is set aside, and the cause is remanded for a new trial.

BAKER and DOYLE, JUDGES, concur.