## JESSE KNIGHT v. STATE.

No. A-2890—Opinion Filed Aug. 8, 1919.

(182 Pac. 734.)

1. **HOMICIDE—Murder in First Degree—Evidence.** Evidence of previous malice and premeditation not necessary to sustain a conviction of manslaughter in the first degree, where a homicide is committed in the heat of passion with a deadly weapon, per se.

2. **EVIDENCE—Documentary Evidence—Illegal Search.** Documentary evidence secured by illegal search of the room of another is

not thereby rendered inadmissible as violative of the Constitution of this state.

3. **HOMICIDE—Expressed Malice—Restoration of Friendly Relations.** Where there is evidence of previously expressed malice, and that friendly relations are thereafter apparently restored upon the trial of a defendant for the murder of the person against whom the malice was expressed, it is a question of fact, under proper instructions, for the jury as to whether or not the restoration of friendly relations between the parties at the time of the homicide was in good faith on the part of the slayer.

4. **HOMICIDE—Expressed Malice—Evidence—Harmless Error.** In the trial of a murder charge, erroneous admission of evidence tending to show malice and premeditated design, even though such evidence should be incompetent and prejudicial, becomes harmless, when a verdict of manslaughter is returned by the jury.

5. **HOMICIDE—Instructions.** The instructions given and the requested instructions refused carefully considered, and found free from error.

*Appeal from District Court, Oklahoma County;*
*Geo. W. Clark, Judge.*

Jesse Knight was convicted of manslaughter in the first degree, and appeals. Affirmed.

*Ben F. Williams* and *Pruiett, Day & Sniggs*, for plaintiff in error.

*S. P. Freeling*, Atty. Gen., and *R. McMillan*, Asst. Atty. Gen., for the State.

ARMSTRONG, J. The plaintiff in error, Jesse Knight, hereinafter called defendant, was informed against jointly with his brother for the murder of George E. Long, a severance was granted, and the defendant tried and convicted of manslaughter in the first degree, and sentenced to imprisonment at McAlester for a term of 20 years. To reverse the judgment rendered, he prosecutes this appeal.

The defendant in his brief does not abstract the evidence as required by the rules of this court, and does not seriously contend that the evidence is insufficient to sustain

the conviction of manslaughter in the first degree, had in
this case. We therefore feel it is unnecessary to recite the
voluminous evidence in this case, except in so far as it
may be necessary to an intelligent consideration of the
fundamental errors alleged to have intervened in the trial
of the case. The said evidence is that the defendant, Jesse
Knight, and John Knight were brothers, and that a very
commendable brotherly affection existed between them, es-
pecially on the part of the defendant to John; that the de-
fendant resided in Texas and John in this state; that the
deceased was fire chief of the S. & S. Company, located at
Packingtown, Okla., and had authority to employ all help
needed in the fire department of said company, and that
John Knight was employed by him in the said fire depart-
ment, and that while so employed he contracted syphilis
and was discharged, and at the time of being discharged
he was abused and kicked by the deceased, and bad blood
thereby engendered; that of this and of his physical condi-
tion, John fully advised the defendant by letter, and in-
formed him that his having contracted syphilis was due to
the evil advice of the deceased; that subsequently John's
physical condition improved, and the unfriendly relations,
between him and the deceased were adjusted, and John was
again employed by the deceased in his former position;
that it was while the unkindly feelings existed between
them that the letters put in evidence, to which the defend-
ant duly excepted, were written by the defendant to John,
which said letters expressed great malice toward the de-
ceased, and a determination on the part of the defendant
to avenge the wrongs done John by the deceased, saying
"that he (defendant) still had his automatic oiled and
in good shape." The defendant visited his brother in Pack-
ingtown, where for a short time he was employed, and

returned to Texas. Subsequently he returned to Packingtown, and some months thereafter he and John visited their parents in Tennessee, where they remained about 60 days, and then returned to Packingtown, and John found that his former place in the fire department, in which he desired re-employment, had been filled by another, and John frequently asked others connected with the deceased as to whether or not the deceased intended to employ him again, and as to what he intended to do about it; that on the night of the homicide the defendant and his brother visited the fire hall of the S. & S. Company, in which hall the deceased had his bed, and on which he was then lying partly undressed, with his shoes off; that the defendant and his brother John engaged with others in a game of cards; that while they were so engaged the deceased got up, and in his stocking feet went into the toilet which adjoined said fire hall, and John, having gotten another to take his place in the card game, immediately followed the deceased into said toilet; that in about a minute the deceased called "Tom," who was an employe of said fire department, and who was also engaged in the said game of cards, several times, and immediately thereafter the deceased and John returned to the fire hall, and John had hold of deceased and was striking at him; that the deceased was severely cut about the face, and bleeding very profusely, and apparently in a very weak condition; that the deceased seized a fire nozzle and held it in a position to strike, and the deceased was then seized and pulled back by the defendant, who immediately drew his pistol and shot the deceased through the head, and deceased fell and immediately expired; that the defendant immediately said, in explanation as to why he shot the deceased, "that the deceased was trying to knock his head off with the nozzle,

that he could not stand for that, that he could not stand for a thing like that," and shortly thereafter left the fire hall, went to Texas, and thence to his parents' home in Tennessee, returned to Oklahoma, and surrendered.

The defendant testified that he killed the deceased in order to protect his brother from being killed or receiving great bodily harm; that at the time he shot the deceased he entertained no unkindly feelings toward him, and that when he wrote the said letters to his brother, which were in evidence, he was mad and worried, and did not intend to advise his brother to kill the deceased, nor did he intend to threaten the deceased; that his object in writing his brother said letters was to cause him to be careful and to keep him out of trouble; and that at the time said letters were written he had never seen and did not know the deceased.

The defendant excepted to the giving of paragraph 15 of the instructions given the jury, which paragraph reads:

"Threats made by the defendant, if any, and all declarations of personal hostility of the defendant, if any, against the deceased, are proper for your consideration, to determine the question of malice or criminal intent of the defendant, if any, at time of the fatal difficulty; but if you find from the facts and circumstances in evidence in the case that the defendant and deceased, after any such threats or declarations of hostility, if any, made up good friends, and each forgave the other, all past differences and animosities, and no new threats or hostilities could be considered, by the jury as evidence of malice; but if the jury believes from the evidence beyond a reasonable doubt that the defendant had not in good faith forgiven deceased, and made up good friends, prior to the fatal difficulty, then the jury has the right to consider the past threats or expressions of hostility of the defendant, if any there were,

for the purpose, with the other evidence in the cause, of determining the question of malice."

The defendant complains of the action of the court in refusing to give requested instruction No. ——, which said refusal was excepted to. The instruction is as follows:

"What is or is not an overt action—that is, what act upon the part of the person slain will justify the person taking his life—varies with the circumstances of each particular case. Under some circumstances the slightest movement may justify instant action on the part of the person threatened with danger, under other circumstances that might not be true, and it is for the jury, viewing the facts and circumstances in evidence from the defendant's standpoint, to determine how this may be in each case."

A motion for a new trial was filed and overruled, and exceptions saved.

The most insistent contention of the defendant is that the court committed fundamental error in admitting in evidence the letters written by the defendant to his brother John, prior to the homicide, and with this contention we are not in accord.

The offense of which the defendant was convicted, manslaughter in the first degree, is defined by subsection 2 of section 2320, Rev. Laws 1910, as follows:

"When perpetrated without a design to effect death, and in a heat of passion, but in a cruel and unusual manner, or by means of a dangerous weapon, unless it is committed under such circumstances as constitute excusable or justifiable homicide."

Hence, where the killing is done, as in the instant case, "in a heat of passion by means of a deadly weapon," it is not necessary to show previous malice and premeditation to sustain a conviction of manslaughter in the first

degree, and as the only office of the letters of the defendant to his brother was to show expressed malice toward the deceased and premeditation to kill him, if it was error to admit such letters in evidence, which we do not hold, such error was not such as to entitle the defendant to a reversal in this case. Section 6005, Rev. Laws 1910.

We do not think that the letters put the character of the defendant in issue, nor that the fact that the letters were obtained by unlawful search of John's trunk, in violation of provisions of the Constitution of this state, rendered said letters inadmissible in evidence.

We think requested instruction No. —— was properly refused, as the phase of the case therein stated was fully covered by general instructions of the court, in which the court fairly presented both sides of the case, and that *Green v. United States,* 2 Okla. Cr. 55, 101 Pac. 112, cited by defendant, does not support his claim of fundamental error in refusing to give said requested instruction. In *Green v. United States, supra,* it is shown that the trial judge "did not correctly and sufficiently cover the said phase of the case," the condition in which the defendant might act in defense of himself or of his brother, while in the instant case the court by its instruction did "correctly and sufficiently cover said phase of the case." The motion for a new trial was properly overruled.

Finding no reversible error in the record, the judgment of the trial court is affirmed.

DOYLE, P. J., and MATSON, J., concur.