Virginia McKEE, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–13067.

Court of Criminal Appeals of Oklahoma.

May 31, 1962.

Rehearing Denied June 14, 1962.

Elmore Page, Tulsa, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

BUSSEY, Judge.

Virginia McKee, defendant below, was charged, tried, and convicted in the District Court of Tulsa County, Oklahoma, with the slaying of her husband Thomas McKee. The jury found her guilty of Manslaughter in the First Degree and fixed her punishment at six years in the State Penitentiary.

Thereafter, timely appeal was perfected to this court. From the record, it appears that the defendant and the deceased had been married about 15½ years prior to the date of the homicide herein involved.

The testimony discloses that considerable strife had existed between the parties immediately preceding the slaying.

On the morning of August 31, 1960, Virginia McKee and the deceased drove from their home near Broken Arrow to Tulsa, where both were employed.

The defendant reported for work at Clarke's Clothiers, but shortly thereafter she left her place of employment and went to the Davis Sporting Goods Store at 14 East Third Street where she purchased a small Browning .25 caliber automatic pistol and about ten rounds of ammunition.

She then proceeded to seek out her husband at the Binding Stevens Company at First and Boulder, but was unable to find him there. Soon thereafter about 10:30 A.M. as defendant was walking along Main Street in a southerly direction, the deceased drove past the defendant, spoke to her as he passed, turned into an alley between Main Street and Boston Avenue, on Fourth Street, parked the company truck in the alley, started walking up the alley and encountered the defendant near the entrance of the alley.

Mr. William J. McPherson, a witness for the State, testified that he saw Mrs. McKee standing at the corner of the alley with her right hand in a paper sack and that as

the deceased emerged from the alley, the defendant fired a number of shots into the deceased's body, and that the deceased staggered back into the alley.

Mr. McKee expired on the spot and defendant was arrested at the scene and taken to the Tulsa Police Station where she gave a confession to the police officers.

Medical testimony discloses that six shots entered the deceased's body and that cause of death was a bullet perforation of the heart.

Defendant admitted the slaying but plead self defense, and in this connection sought to introduce into evidence the testimony of Dr. Milford Ungerman, a doctor specializing in psychiatry.

Dr. Ungerman had first examined defendant in his office sometime just prior to October 29, 1960, and thereafter had examined her seven or eight times while conducting a "psychiatric survey" of her.

The Court sustained the County Attorney's objection to the introduction of Dr. Ungerman's testimony into evidence, and the defendant took an exception to the ruling of the court.

Thereupon, in the absence of the jury, the court declined to admit for the jury's consideration the opinion of Dr. Ungerman relating to the defendant's motivation in slaying her husband.

For the first assignment of error, the defendant urges that the court erred in refusing to allow Dr. Ungerman to testify as to the state of mind of the accused at the time the slaying occurred.

■ The state of mind of the accused is the proper subject for expert testimony when the defense is based on a plea of insanity at the time of the commission of the act but such is not the case here presented.

Argument of counsel that the defendant was in fear of her life after having been threatened by the deceased at a time prior to the slaying and that she was justified in seeking out the deceased and killing him before he could carry into execution his threats is patently contrary to the orderly rules of civilized society.

To adopt such a view would be to regress to the law of the claw and fang and accord to each person the right to lay in ambush and spring on his unwary prey without warning if, at any time prior to the slaying, his victim had threatened to kill him.

To allow a psychiatrist to testify that the defendant felt it was necessary to slay her husband in order to prevent him from carrying into execution his threat to kill her at some future time would be to adopt this view.

■■ Fear alone is not enough to justify one person to take the life of another. As the Court said in State v. Fine, 90 Mont. 311, 2 P.2d 1016:

"One is not justified in shooting another simply because he fears the other. [See Reed v. State, 2 Okl.Cr. 589, 591, 103 Pac. 1042; Rogers v. State, 12 Okl.Cr. 456, 158 Pac. 637. Fields v. State, 85 Okl.Cr. 439, 188 P.2d 231.]"

Such fear must have been induced by some overt act, gesture, or word spoken by the deceased at the time the homicide occurred which would form a reasonable ground for the belief of the accused that he is about to suffer death or great bodily harm. And it is within the exclusive province of the jury, as the sole trier of facts, to determine, in light of all of the circumstances surrounding the slaying, whether or not such reasonable ground existed as to constitute a justifiable defense of the person of the accused.

As the Court said in Fixico v. State, 39 Okl.Cr. 95, 263 P. 171:

"The bare belief of one assaulted that he is about to suffer death or a great personal injury will not, in itself, justify him in taking the life of his adversary. There must exist reasonable grounds for such belief at the time of the killing, and the existence of such ground is a question for the jury." See Edge v. State, 39 Okl.

Cr. 277, 264 Pac. 213, and Hood **v.** State, 70 Okl.Cr. 334, 106 P.2d 271.

■ To allow a psychiatrist to testify on the basis of examinations made more than thirty days after the slaying as to whether or not the accused acted in necessary self defense, on the basis of facts existing at the time of the slaying, would clearly sanction an invasion of this exclusive province of the jury.

For her second assignment of error, defendant argues that the trial court committed reversible error in overruling her objections to the testimony of Dr. Leo Lowbeer, the pathologist who examined the deceased when he testified as to the position of the deceased at the time the bullets entered his body. Dr. Lowbeer was not qualified as a ballistics expert.

In support of this contention, the defendant cites Price v. United States, 2 Okl.Cr. 499, 101 P. 1036.

In that case the court, speaking through Judge Furman, stated the principle of law there applied as follows:

"It has been uniformly held by the courts that this is not a proper subject for expert evidence. From this it necessarily follows that a physician should not be permitted to testify as an expert to the position of the body of the deceased when the wound was received, based upon the range of the bullet after it entered his body. This is a matter of speculation, with reference to which the opinion of one man is as good as that of another. It was entirely proper for the physician to describe fully the location, character, and range of the wound, but it was error to permit the physicians to go further and give their opinion as to the position of the arm of the deceased at the time the fatal wound was received. But it is not every error in the admission or rejection of testimony which constitutes ground for the reversal of a conviction.

\* \* · \* \* \* \*

"The pivotal question in this case was the position of the arm of the deceased at the time that the defendant fired the fatal shot. If it was hanging down by his side, then the jury would be authorized to believe that the defendant had testified falsely as to the most material point in his defense, and, believing this, they would be bound to convict him. The issue was clear-cut and decisive of the case."

The testimony of Dr. Lowbeer that the deceased was prostrate when some of the shots were fired and his testimony relating to the distance from which they were fired does not conflict with the testimony of the defendant given on the trial or her confession introduced against her.

In the confession, she stated:

"Q. Where did you have the gun when you came up the alley?

"A. In a paper sack. He fell back into the alley, I think, face down. He started to raise up. I was afraid that he would shoot me, he'd said that was what he would do if I ever did anything to him, that he would shoot me before he died. I then shot at him until the gun was empty."

· On the trial of the case, her testimony was in part as follows:

"A. Well, I was afraid he was going to shoot me when he put his hand in his pocket and I shot him.

"Q. All right, do you know how many times you shot him?

"A. No, I don't.

\* \* \* \* \* \*

"Q. Well, now, after you shot the first time, do you recall ever shooting again?

"A. No, sir, the next thing I realized that the gun was empty.

"Q. And where was your husband when you—when the gun was empty, if you remember?

"A. He was lying in the alley."

■ It thus appears that while the court erred in admitting the testimony of Dr. Lowbeer, this testimony did not relate to a pivotal issue as the testimony did in Price v. United States, supra, but, to the contrary, falls squarely within the rule annunciated in Wells v. Territory, 14 Okl. 436, 78 P. 124, which is as follows:

"Where a witness, who is qualified as a medical expert, as coroner, had made a careful examination of the body of the deceased, and the surroundings, shortly after the homicide, and after having described the wound, points of entrance and exit, and direction of the bullet through the body, and all of the surrounding facts and circumstances in detail, was permitted to give his opinion as to the position of the deceased at the time that the wound was inflicted; and where the defendant admits the killing, and there is no issue on which the testimony could operate against him, Held, If error, was harmless, and would afford no grounds for reversal."

The last two assignments of error, Propositions III and IV of defendant's brief, will be treated under one general assignment of error for they relate to the alleged improper introduction of rebuttal testimony by the State.

The defendant contends that:

"All of the rebuttal testimony of the State, could have, and should have, been used as its evidence in chief."

Defendant further contends that certain rebuttal testimony did not fall within an exception to the hearsay evidence rule; that such incompetent evidence materially prejudiced her rights to a fair and impartial trial; and that in any event, such testimony, if competent, was a part of the State's evidence in chief, and was held back for rebuttal testimony in order to take some advantage in the State's prosecution of defendant.

In support of this contention, the defendant cites the second syllabus of Hall v. State, Okl.Cr., 309 P.2d 300, in which the court said:

"When the State makes out a clear case in chief, the fact that certain testimony was reserved for rebuttal, which would have been admissible in establishing the case in chief, but which is clearly in rebuttal of a material defense, of testimony introduced in defense, does not render the same inadmissible in rebuttal."

■ Conceding that there is considerable merit to the propositions raised by the defendant in her third and fourth assignments of error, and granting that the trial court may have erred in admitting some of the testimony in rebuttal, we have carefully analyzed these alleged errors in light of the entire record and are of the opinion that they are not of such a fundamental nature as to require reversal.

The defendant was charged with murder, a crime punishable by either life imprisonment or death in the electric chair, but the jury found her guilty of manslaughter and fixed her punishment at six years in the State Penitentiary. It is undisputed that she bought a gun, sought out the deceased and shot him six times on Main Street in Tulsa, Oklahoma, in full view of eyewitnesses. Her testimony amounted to a judicial confession.

The evidence against the defendant left the jury with no other alternative but to find her guilty.

Although we do not believe that the error which the trial court committed by allowing the introduction of improper rebuttal testimony was fundamental error, we think that justice would be served by a modification of the sentence.

■ In a close case the introduction of improper rebuttal testimony may constitute reversible error, but in a case such as the case at bar, where the record overwhelmingly supports the guilt of the accused, and it is evident that if the same facts were presented to a jury upon a new trial of the

cause they would arrive at the same verdict, this error will be treated as a basis for a modification of the sentence. See Titsworth v. State, Okl.Cr., 368 P.2d 526.

We therefore hold, under authority of 22 O.S.A. § 1066, that the judgment and sentence in the instant case should be modified from a term of six years in the State penitentiary to a term of five years in the penitentiary, and as so modified, the judgment and sentence of the District Court of Tulsa County is affirmed.

NIX, P. J., and BRETT, J., concur.