Levonzer TERRELL, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–73–413.

Court of Criminal Appeals of Oklahoma.

June 28, 1974.

Thomas A. Wallace, Sapulpa, for appellant.

Larry Derryberry, Atty. Gen., Kenneth L. Delashaw, Asst. Atty. Gen., for appellee.

## OPINION

BUSSEY, Judge:

Appellant Levonzer Terrell, hereinafter referred to as defendant, was charged and tried for the offense of Shooting with Intent to Kill in the District Court, Creek County, Case No. CRF–73–28. He was convicted for the offense of Assault and Battery with a Deadly Weapon[1] and was sentenced to serve five (5) years imprisonment. From said judgment and sentence a timely appeal has been perfected to this Court.

At the trial, the following facts were revealed: In the morning and afternoon of March 2, 1973, several persons were drinking whiskey and rolling dice in the home of Mrs. Bertha Gay in Sapulpa, Oklahoma. Present were Mrs. Gay and her brother, Ben Cox; the defendant; Earl Williams; and Erma Jean Haggy. The group played dice and consumed several half-pints of whiskey during the course of the afternoon. At approximately 5:00 or 5:30 p. m., defendant accused Cox of "messing with his wife" and cheating at dice. Defendant, a man in his mid-fifties, jumped upon Cox, who was 73 years old at the time, and began beating him with his fists. Mrs. Gay then ran into a bedroom, secured a board used as a bed slat, and hit defendant sharply on the head. Defendant jumped up and stated that he was going to his house to get a gun and kill both Mrs. Gay and Mr. Cox. Defendant proceeded to his house several doors down the street, and Mrs. Gay went to a neighbor's house across the street and called the police. Before the police arrived, Mrs. Gay looked out the neighbor's window, saw defendant returning from his home and entering the gate to Mrs. Gay's home. She noticed that he had a hat over one hand. A few minutes later she heard one shot coming from within her house. Officer Kelly Barkley of the Sapulpa Police Department arrived on the scene shortly thereafter. At this point defendant had re-emerged from Mrs. Gay's home and was walking down the street at a normal pace. Mrs. Gay ran out of the neighbor's house and, pointing at defendant, screamed, "There is a man

---

1. The two offenses are synonymous. See 21 O.S.1971, § 652 and Bates v. State, Okl.Cr., 505 P.2d 991 (1973).

shooting in my house, he's going down the street right there." Officer Barkley asked defendant where he was going, whereupon defendant took a .38 caliber pistol from his pocket and handed it to the officer, saying, "Here it is." Officer Barkley identified State's Exhibit #2 as being the same .38 revolver. At the time of arrest, defendant was bleeding from a wound in his forehead. Defendant made several voluntary statements to police officers after being advised of his Miranda rights—one was made to Officer Barkley shortly after the shooting; another was made to District Attorney Investigator McKenzie and Detective Clark that evening.

According to the statement given to McKenzie, defendant returned to the Gay house and came upon Cox lying on the floor playing dice with Mackey and Johnson, neither of whom testified at trial. At one point McKenzie stated that defendant told him he had shot Cox in his side when he was lying on the floor. (Tr. 30). Detective Clark gave a physical demonstration of a re-enactment of the shooting which defendant had performed for him during interrogation.

In his statement to Officer Barkley, defendant said that he had first pointed the gun at Cox's head and told him he was going to kill him. Someone in the room said, "Don't kill him," and defendant "on second thought" lowered the gun and fired into Cox's midsection. He also told Barkley that he had wanted to kill Cox because he had been "messing with my wife."

After the shooting Cox was transferred to a Tulsa hospital where surgery was performed by Dr. Donald Bobek who testified at trial as an expert medical witness. He stated that Cox was admitted to the hospital in critical condition, suffering from a wound which entered on the left side below the rib cage, and exited on the right side after passing through the rib cage and several major internal organs. He also testified that Cox remained in the hospital from March 2nd through April 6th. He

was then transferred to a nursing home until April 24th, at which time he was re-admitted to the hospital. Over defense counsel's objection, Dr. Bobek was allowed to describe Cox's condition at the time of his re-admission to the hospital and also to state his assumption that Cox was in a reclining position at the time he was shot.

Defendant testified to substantially the same version of the events preceding the fight with Cox as did the witnesses for the State. He stated that he caught Cox cheating at cards and complained. Cox then threw an empty whiskey bottle at him, striking him on the shoulder. They fought for a few minutes until Mrs. Gay struck defendant on the forehead with the bed slat. From that point on, defendant claimed to have no memory of the events described by the State's witnesses, though he did not claim their testimony to be untrue.

At the close of the trial, the jury returned a verdict of guilty and imposed a sentence of five years imprisonment.

■ Defendant's first assignment of error concerns the testimony of Dr. Bobek as to Cox's mental and physical condition at the time he was re-admitted to the hospital weeks after the shooting. The testimony objected to reads as follows:

"DISTRICT ATTORNEY: When he was re-admitted, what was his condition?

DR. BOBEK: It was my feeling he had —well you couldn't communicate with the man. He wouldn't eat, he wouldn't drink. He was in a state of malnutrition and dehydration and disorienteated [sic] and confused—

DEFENSE COUNSEL: I renew my objection and ask that the testimony be stricken for the reason and on the grounds it has no bearing on any issues in this case and is prejudicial to the defendant.

THE COURT: I'll overrule that objection. Go ahead."

Defendant argues that it was error to allow the physician to testify beyond the nature and extent of the injuries.

Testimony by a doctor, as to the physical condition of an assault victim has been held admissible on six grounds. First, it has been held relevant as to the degree of violence used in the assault. Second, it has been viewed as indicative of the criminal intent of the accused. Third, where, as here, there are present several lesser-included degrees of assault, it has been held admissible as indicating to the jury which degree the defendant may be guilty of. Fourth, it has been held admissible in indicating the type or dangerousness of the weapon used. Fifth, it has been held admissible as part of the res gestae. Sixth, it has been held admissible as providing the jury with a basis for the imposition of punishment. See Annot., 87 A.L.R.2d 927.

The State contends that the testimony in the instant case was admissible as to defendant's criminal intent and as a basis for the imposition of punishment. We agree with this position insofar as Dr. Bobek described Cox's physical condition immediately after the shooting, and even as late as the time he was re-admitted to the hospital. We are less convinced of the relevancy of testimony as to Cox's mental condition (i. e., confusion, disorientation, etc.). However, in view of the fact that defendant received only a five year sentence for an offense which carries a maximum penalty of 20 years, we feel that he was not prejudiced by the admission of the above testimony. We, therefore, find this assignmnet of error to be without merit.

█ Defendant's second assignment of error concerns the following portion of the direct examination of Dr. Donald Bobek, the surgeon who treated Ben Cox after the shooting:

"Q. (BY DISTRICT ATTORNEY): Doctor, from your examination and from your surgical procedures, did you reach a conclusion as to what position Ben Cox was in at the time he was shot?

A. Well, I would assume he was in a reclining position with the right side down.

MR. TOM WALLACE: To which we object, no proper foundation having been laid, no predicate and move the answer be stricken.

THE COURT: I'll sustain that objection and admonish the jury not to consider the answer just given by the witness and no proper foundation having been laid for that particular answer.

Q. I will ask you Doctor, hypothetically, that if you examined or performed surgical operations on a person who had suffered a gunshot wound with a bullet hole entering the left side, exiting the right side, from left to right going upward, would you have an opinion as to what position that person was in—

THE COURT: Don't answer that question.

MR. TOM WALLACE: Same objection.

THE COURT: Come up here.

(Proceedings at the bench, out of the hearing of the jury)

THE COURT: Your close to a mistrial, in case you don't know it. In fact you may already be there.

MR. WALLACE: We so move at this time.

THE COURT: Well, I have forgotten the name of the case, but this is exactly the same thing, over at Drumright where Judge Barnes mistried it and the reason for the mistrial is that while he may be an M.D., he's not an expert on the position of a body, whether it was reclining at the time it was shot and I'll tell you what the case was now, it was Velma Conley.

MR. ROBERTSON: I have further testimony from a Police Officer through which he will testify what position he was in.

THE COURT: That doesn't make any difference. You have this witness on

here as an expert witness. An expert M.D., he is.

MR. WALLACE: It invades the province of the jury.

MR. ROBERTSON: You have asked the jury to disregard it.

THE COURT: That's what I'm going to do for right now.

MR. ROBERTSON: I will withdraw the question.

THE COURT: I would suggest you do so.

(The following proceedings continued within the hearing of the jury.)

MR. ROBERTSON: Your Honor, I'll withdraw that question.

THE COURT: Ladies and Gentlemen of the jury, I think I should advise you that there has been no proper predicate laid and probably couldn't be for the question asked and that's why I sustained the motion and I must admonish you not to consider any answer given as to the position of the body when it was shot or received the wound, if so. That's the best I can do with it right now."

The crux of defendant's assertion of error is that it was improper to allow the expert witness to testify as to what would properly be a question of fact for the jury, to-wit: the position of the victim's body when it was shot. He cites Price v. United States, 2 Okl.Cr. 449, 101 P. 1036 (1909), wherein we held it prejudicial for a physician to speculate on the position of the victim's arm at the time of a shooting. In Born v. State, Okl.Cr., 397 P.2d 924, 937 (1964), we find the following language:

"It is conceded by this Court that an expert witness cannot testify as to the position of a body at the time the shot was fired nor express his opinion relative to the same, as he would be invading the province of the jury. The rule as laid down in Price v. United States, 2 Okl. Cr. 449, 101 P. 1036, is in line with this Court's opinion:

'It has been uniformly held by the courts that this is not a proper subject for expert evidence. From this it necessarily follows that a physician should not be permitted to testify as an expert to the position of the body of the deceased when the wound was received based upon the range of the bullet after it entered his body. This is a matter of speculation, with reference to which the opinion of one man is as good as that of another. It was entirely proper for the physician to describe fully the location, character, and range of the wound, but it was error to permit the physicians to go further and give their opinion as to the position of the arm of the deceased at the time of the fatal wound.' "

The facts in *Price*, however, were quite distinguishable from the instant case in that there, defendant claimed that the victim was drawing on him when he fired. Thus, the question of the position of the victim's arm was a "pivotal" question of fact. Here, defendant claims the question of the position of the victim's body was important because, ". . . Most people have an aversion to the idea of shooting someone who is down . . ." While this may be true, we must, nevertheless reject defendant's argument.

First, the position of Cox's body was not of "pivotal" importance. See McKee v. State, Okl.Cr., 372 P.2d 243 (1962). Second, the punishment imposed by the jury was lenient considering the aggravated nature of the offense and the overwhelming evidence of guilt. Third, the admission of Dr. Bobek's testimony, if erroneous, was harmless for two reasons. First, Officer McKenzie had already testified without objection that defendant had admitted shooting Cox while he was lying down. This renders Dr. Bobek's testimony as merely cumulative. Glass v. State, Okl. Cr., 361 P.2d 230 (1961). Also, we note that the trial court sustained defendant's objection to the testimony and carefully admonished the jury not to consider it. This tends to render the error harmless

where, as here, the verdict failed to reflect prejudice. Sam v. State, Okl.Cr., 523 P.2d 1146 ([1974], citing Bell v. State, Okl.Cr., 381 P.2d 167 [1962]). Accordingly, we find this assignment of eror to be without merit.

Finding no error which would justify modification or reversal, the judgment and sentence appealed from is

Affirmed.

BLISS, P. J., and BRETT, J., concur.