(No. 15401.—Reversed and remanded.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* SAM CASTREE, Plaintiff in Error.

*Opinion filed February 19, 1924—Rehearing denied April 3, 1924.*

1. CRIMINAL LAW—*the constitution prohibits search and seizure without a warrant.* The provision of section 6 of article 2 of the constitution against unreasonable search and seizure prohibits search and seizure without a warrant, and the warrant must show probable cause, be supported by affidavit and describe the place to be searched.

2. SAME—*dwelling cannot be searched under warrant describing the defendant's store.* Where a defendant conducts a small store in one room of his dwelling house, a search warrant describing only the store room will not authorize search of the rest of the building, which the defendant uses exclusively as a dwelling, as the warrant, under section 6 of the bill of rights, must particularly describe the place to be searched.

3. SAME—*source of evidence does not ordinarily affect its competency.* Ordinarily the court will determine the admissibility of evidence without inquiring into the method by which it was procured, if it was obtained by artifice or deceit or unlawfully by stealth or force by an individual not acting under color of authority from the State, but it must not have been obtained in violation of some constitutional or legal right.

4. SAME—*when property unlawfully seized by State cannot be admitted against defendant.* Where the defendant makes timely application before the beginning of the trial for the return of property or papers alleged to have been unlawfully seized by officers of the State without a proper search warrant, the court should hear and determine the legality of the seizure, and if it is found to have been in violation of the defendant's constitutional rights the evidence so obtained should not be admitted. (*People* v. *Brocamp,* 307 Ill. 448, followed.)

5. SAME—*accused is entitled to benefit of presumption of innocence.* Upon his trial the accused is entitled to the benefit of the presumption that he is innocent of the crime with which he is charged until he is proved guilty beyond a reasonable doubt, and upon such trial the indictment is no evidence of his guilt.

6. SAME—*prohibition of unreasonable search and seizure applies to any officer of the government.* The provision of the bill of rights that a citizen shall be secure in his person, house, papers

and effects against unreasonable search and seizure is intended for the protection of the individual against oppressive action of the government and of every official who administers a part of the functions of government.

7. SAME—*when State cannot introduce witness in chief after evidence is closed.* After the evidence is heard and both sides have rested, the court should not permit the State, over the objection of the defendant, to introduce a witness who gives evidence in chief, where no reason is shown for failure to produce the witness while the prosecution was introducing its evidence in chief.

8. SAME—*what evidence is not competent to show former jeopardy.* Where a defendant is charged with the unlawful possession of intoxicating liquor and the State introduces in evidence liquor found in his possession, which the defendant testifies was in his possession prior to his former conviction on a similar charge, he should not be permitted to introduce, for the purpose of showing former jeopardy, only so much of the former proceeding as shows that a jury was sworn and evidence heard, as such proof is not, alone, sufficient to show former jeopardy.

THOMPSON, J., dissenting.

WRIT OF ERROR to the County Court of Winnebago county; the Hon. FRED E. CARPENTER, Judge, presiding.

ROY F. HALL, for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, WILLIAM JOHNSON, State's Attorney, GEORGE C. DIXON, and A. B. LOUISON, (JAMES W. GULLETT, of counsel,) for the People.

Mr. JUSTICE DUNN delivered the opinion of the court:

An information of two counts was filed against Sam Castree in the county court of Winnebago county, charging him in the first count with having on February 1, 1923, unlawfully sold intoxicating liquor, and in the second with unlawfully possessing intoxicating liquor on the same date. He was tried and found guilty on both counts, and on March 26, 1923, his motions for a new trial and in arrest of judgment were overruled and he was sentenced to 150

days' imprisonment in the county jail and to pay a fine of $100 and costs. He sued a writ of error out of this court on the ground that a constitutional question is involved.

Before the information was filed the State's attorney had made a complaint, under oath, to two justices of the peace of the county and had caused a search warrant to be issued to search the store building occupied by the plaintiff in error, known as 1427 Rock street, in the city of Rockford, for intoxicating liquor, under which two deputy sheriffs had searched his residence and found and taken away three jugs of intoxicating liquor. The affidavits for the search warrant stated that the reasons for the affiant's belief that intoxicating liquor was unlawfully possessed and kept for sale in the premises were "information from responsible person who has seen intoxicated persons coming from said premises." Before the trial the plaintiff in error filed a petition, verified by his oath, stating that 1427 Rock street is not a store building but is a residence, and he conducted a small store in the room of the house, which fronts and has its entrance on Lane street while the entrance to his residence is from Rock street; that there is a door from the house leading into the room which he uses as a store, and there is no other store room in the dwelling and that all the remainder of such dwelling house is used solely as a dwelling; that the officers having the warrant searched not only the store room but went through the door into his dwelling and searched it in the night time, and the intoxicating liquor which they seized was not found in the store but was taken from his house. The prayer of the petition was that the court investigate the question and that the property alleged to have been taken under the search warrant be impounded and not used in evidence against the plaintiff in error. The court denied the petition, and on the trial admitted in evidence, over the objection of the plaintiff in error, the proceedings under the search warrant, the search of the dwelling as well as the store room, the

finding of intoxicating liquor in the dwelling, and the jugs and liquor which were seized. The action of the court in denying the motions of the plaintiff in error and admitting the evidence of the officers as to the result of their search raises the principal question in the case, which is, Is evidence obtained by an unreasonable search conducted by officers of the State admissible on the trial of the owner of the premises searched on a criminal charge, upon the ground that it was obtained in violation of his constitutional right?

Section 6 of article 2 of the State constitution provides: "The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated; and no warrant shall issue without probable cause, supported by affidavit, particularly describing the place to be searched, and the persons or things to be seized." Not all searches are prohibited, but unreasonable searches, only. Warrants may issue but not without probable cause, supported by affidavit, and only to search the place particularly described. A search without a warrant is an unreasonable search, and a search of a place not described is without a warrant and is unreasonable. The search of the plaintiff in error's dwelling under a warrant particularly describing a store was unreasonable, and therefore was an invasion of the right of security guaranteed him by section 6 of the bill of rights. The fourth amendment to the Federal constitution is in practically the same words. It was one of the ten amendments ratified by the legislatures of the various States after having been submitted by the first Congress in response to the recommendation of the States ratifying the constitution, and the importance with which the right which it guarantees has been regarded is indicated by the various decisions of the Supreme Court sustaining it and the language of one of the most recent of them: "It would not be possible to add to the emphasis with which the framers of our constitution,

and this court in *Boyd* v. *United States,* 116 U. S. 616, in *Weeks* v. *United States,* 232 id. 383, and in *Silverthorne Lumber Co.* v. *United States,* 251 id. 385, have declared the importance to political liberty and to the welfare of our country of the due observance of the rights guaranteed under the constitution by these two amendments. [The fourth and fifth.] The effect of the decisions cited is, that such rights are declared to be indispensable to the 'full enjoyment of personal security, personal liberty and private property;' that they are to be regarded as of the very essence of constitutional liberty, and that the guaranty of them is as important and as imperative as are the guaranties of the other fundamental rights of the individual citizen,—the right to trial by jury, to the writ of *habeas corpus,* and to due process of law. It has been repeatedly decided that these amendments should receive a liberal construction so as to prevent stealthy encroachment upon or 'gradual depreciation' of the rights secured by them, by imperceptible practice of courts, or by well-intentioned but mistakenly overzealous executive officers." *Gouled* v. *United States,* 255 U. S. 298.

It is the general rule that the admissibility of evidence is not affected by the source from which it comes or the illegality of the means by which it was procured. The rule is stated in *Gindrat* v. *People,* 138 Ill. 103, as follows: "Courts, in the administration of the criminal law, are not accustomed to be over-sensitive in regard to the sources from which evidence comes, and will avail themselves of all evidence that is competent and pertinent and not subversive of some constitutional or legal right." The last clause is important and is vital to the question now under consideration, for to receive the evidence in this case would be subversive of the plaintiff in error's constitutional right to be secure in his person, houses, papers and effects against unreasonable searches and seizures. In the *Gindrat case* it was not so, for the person who obtained the evidence there

was only a private detective acting under a private employ-
ment having no official authority, and it was held, in ac-
cordance with the universal holding of the Federal courts in
similar cases, that section 6 of article 2 of our constitution
is a limitation on the powers of the State government and
has nothing to do with the unauthorized acts of private
individuals having no authority or color of authority from
the State. That provision in a constitution is intended to
protect the individual from official oppression and not from
private trespass or criminal violence. The opinion in the
*Gindrat case* makes plain the difference, in pointing out the
clear distinction between that case and the case of *Boyd*
v. *United States, supra.* In other cases in this court the
rule has been applied that where a defendant's property or
papers have been by artifice or deceit, or unlawfully, by
stealth or force, obtained by an individual not acting under
color of authority from the State, the court will determine
the admissibility of the evidence without inquiring into the
method by which it was procured. *Siebert* v. *People,* 143
Ill. 571; *Trask* v. *People,* 151 id. 523; *People* v. *Paisley,*
288 id. 310.

In *People* v. *Brocamp,* 307 Ill. 448, the question was
presented for the first time in this court of the admissibil-
ity in evidence of stolen property which had been obtained
by an unlawful search and seizure conducted by virtue of
their office by State officers charged with the prosecution
of crime. In that case, without a warrant such officers in-
vaded the defendant's premises and without authority of
law searched for and seized certain property alleged to
have been stolen. It was a case within the exception men-
tioned in the *Gindrat case,* subversive of the defendant's
constitutional right, and we held that while the court, on
objection to the admission of evidence, will not stop the
trial of the case and enter upon the trial of a collateral is-
sue as to the source from which the evidence was obtained,
where the defendant makes timely application, before the

beginning of the trial, for an order directing the return to him of the property or papers unlawfully seized, the court should hear and determine the question of the legality of the seizure, and if it erroneously refuses to do so and receives the property in evidence against the defendant over his objection, it is an error for which the judgment of conviction must be reversed. This decision was in accordance with the decisions of the Supreme Court of the United States and of many of the States of the Union.

In *Boyd* v. *United States, supra,* the court held that the enforced production, through an order of the court, by a defendant of his private papers, to be used in evidence against himself in a criminal case, was equivalent to an unreasonable search and seizure. The intimate relation between the fourth amendment, which prohibits unreasonable searches, and the fifth, which declares that no person shall be compelled in a criminal case to be a witness against himself, was considered, and it was held that an actual entry upon premises and a search for and seizure of papers were not necessary to constitute an unreasonable search and seizure within the meaning of the fourth amendment, but a compulsory production of a person's private books and papers to be used against him in a criminal proceeding was within the spirit and meaning of the amendments. It was said in the opinion: "We are further of the opinion that a compulsory production of the private books and papers of the owner of goods sought to be forfeited in such a suit is compelling him to be a witness against himself within the meaning of the fifth amendment to the constitution, and is the equivalent of a search and seizure, and an unreasonable search and seizure, within the meaning of the fourth amendment. Though the proceeding in question is divested of many of the aggravating incidents of actual search and seizure, yet, as before said, it contains their substance and essence and effects their substantial purpose. It may be that it is the obnoxious thing in its mildest and

least repulsive form; but illegitimate and unconstitutional practices get their first footing in that way, namely, by silent approaches and slight deviations from legal modes of procedure. This can only be obviated by adhering to the rule that constitutional provisions for the security of person and property should be liberally construed. A close and literal construction deprives them of half their efficacy and leads to gradual depreciation of the right, as if it consisted more in sound than in substance. It is the duty of courts to be watchful for the constitutional rights of the citizen and against any stealthy encroachments thereon."

In *Adams* v. *New York*, 192 U. S. 585, the court, without deciding the contention that the fourteenth amendment made the exemption from unreasonable searches and seizures and from compulsory self-incrimination provided by the fourth and fifth amendments to the constitution of the United States privileges and immunities of citizens of the United States of which they could not be deprived by the action of the States, decided that the rule that though papers and other subjects of evidence may have been illegally taken from the possession of the party against whom they are offered, or otherwise unlawfully obtained, this is no valid objection to their admissibility if they are pertinent to the issue, was applicable in that case. A search warrant had been issued for certain policy slips, (slips of paper used in the gaming device of playing policy,) in executing which the officers took not only the policy slips but certain other papers, which were received in evidence against the defendant on the trial against his objection. No objection was made to the testimony of the officers holding the search warrant, as to the policy slips. The objection was to receiving in evidence certain private papers, and it was not made in an attempt to resist the unlawful seizure of the private papers but arose only upon objection to the introduction of testimony clearly competent as tending to establish the guilt of the defendant. Upon the objection thus

made it was held there was no violation of the constitutional guaranty of privilege from unlawful search or seizure.

In *Weeks* v. *United States, supra,* an indictment was returned against the defendant in the district court of the United States, and he was arrested without a warrant by a police officer. Other police officers had gone to the house of defendant, and, getting a key through a neighbor, entered the house, searched the defendant's rooms and took possession of various papers and articles found there, which were afterward turned over to the United States marshal. Later in the same day the police officers returned with the marshal, and the marshal searched the defendant's room and carried away certain letters and envelopes found in the drawer of a chiffonier. Neither the marshal nor the police officers had a search warrant. Before the trial the defendant filed a petition for the return of the papers, books and other property which had been taken, alleging that they were improperly held by the district attorney, marshal and clerk, in violation of the defendant's rights under the constitution; that the district attorney intended to use them at the trial of the defendant, and by reason of these facts the defendant's rights under the constitution had been and would be violated unless the court ordered the return of the papers. Upon consideration of the petition the court ordered such property as was not pertinent to the charge against the defendant returned but denied it as to pertinent matters, reserving the right to pass upon the pertinency at a later time. The district attorney, in obedience to the order, returned part of the property taken and retained the remainder, to be used in evidence on the trial. After the jury had been sworn, and before any evidence had been taken, the defendant again presented his petition for the return of the property, which was denied by the court. When the papers were offered in evidence during the trial the defendant objected on the ground that they had been obtained without a search warrant and by breaking open

his home, in violation of the fourth and fifth amendments to the constitution of the United States, and the objection was overruled. The Supreme Court of the United States reversed the judgment for the error in denying the petition for the return of the property and receiving the papers in evidence, saying in the course of the opinion: "If letters and private documents can thus be seized and held and used in evidence against a citizen accused of an offense, the protection of the fourth amendment, declaring his right to be secure against such searches and seizures, is of no value, and, so far as those thus placed are concerned, might as well be stricken from the constitution. The efforts of the courts and their officials to bring the guilty to punishment, praiseworthy as they are, are not to be aided by the sacrifice of those great principles, established by years of endeavor and suffering, which have resulted in their embodiment in the fundamental law of the land. * * * In *Adams* v. *New York*, 192 U. S. 585, this court said that the fourth amendment was intended to secure the citizen in person and property against unlawful invasion of the sanctity of his home by officers of the law, acting under legislative or judicial sanction. This protection is equally extended to the action of the government and officers of the law acting under it. (*Boyd case*, 116 U. S. 616.) To sanction such proceedings would be to affirm by judicial decision a manifest neglect, if not an open defiance, of the prohibitions of the constitution intended for the protection of the people against such unauthorized action." In regard to the *Adams case, supra,* it was said: "This doctrine thus laid down by the New York Court of Appeals and approved by this court, that a court will not, in trying a criminal cause, permit a collateral issue to be raised as to the source of competent testimony, has the sanction of so many State cases that it would be impracticable to cite or refer to them in detail. Many of them are collected in the note to *State* v. *Turner*, 136 Am. St. Rep. 129, 135, *et seq.*

311—26

After citing numerous cases the editor says: "The under-lying principle of all these decisions obviously is, that the court, when engaged in the trial of a criminal action, will not take notice of the manner in which a witness has pos-sessed himself of papers or other chattels, subjects of evi-dence, which are material and properly offered in evidence. (*People* v. *Adams, supra.*) Such an investigation is not involved, necessarily, in the litigation in chief, and to pur-sue it would be to halt in the orderly progress of a cause and consider incidentally a question which has happened to cross the path of such litigation and which is wholly inde-pendent thereof.' It is therefore evident that the *Adams case* affords no authority for the action of the court in this case when applied to in due season for the return of papers seized in violation of the constitutional amendment. The decision in that case rests upon incidental seizure made in the execution of a legal warrant and in the application of the doctrine that a collateral issue will not be raised to as-certain the source from which testimony competent in a criminal case comes."

In *Silverthorne Lumber Co.* v. *United States, supra,* an indictment was returned in the district court of the United States against the two Silverthornes, father and son, who were arrested and detained in custody for several hours. While they were so detained representatives of the depart-ment of justice and the United States marshal, without any authority, went to the office of their company and took all the books, papers and documents found there to the office of the district attorney. An application was made to the district court for a return of what had thus been unlaw-fully taken, which was opposed by the district attorney so far as he had found evidence against the defendants, and it was stated that the evidence was before the grand jury. The district attorney caused to be issued an invalid subpoena for certain documents relating to the charge in the indict-ment. The Silverthornes refused to obey the subpoena and

an order of court to produce the books and documents of the company before the grand jury, to be used in regard to alleged violation of the statutes of the United States by them, on the ground that the order of the court infringed the rights of the parties under the fourth amendment to the constitution. The opinion of the court states: "It must be assumed that the government planned, or at all events ratified, the whole performance. Photographs and copies of material papers were made, and a new indictment was framed based upon the knowledge thus obtained. The district court ordered a return of the originals but impounded the photographs and copies. Subpœnas to produce the originals then were served, and on the refusal of the plaintiffs in error to produce them the court made an order that the subpœnas should be complied with, although it had found that all the papers had been seized in violation of the parties' constitutional rights." Upon a refusal to obey this order the court fined the Silverthorne Lumber Company $250 and ordered Frederick W. Silverthorne to be imprisoned until he should purge himself of the contempt. The court said: "The government now, while in form repudiating and condemning the illegal seizure, seeks to maintain its right to avail itself of the knowledge obtained by that means which otherwise it would not have had. The proposition could not be presented more nakedly. It is, that although, of course, its seizure was an outrage, which the government now regrets, it may study the papers before it returns them, copy them, and then may use the knowledge that it has gained to call upon the owners in a more regular form to produce them; that the protection of the constitution covers the physical possession but not any advantages that the government can gain over the object of its pursuit by doing the forbidden act. *Weeks* v. *United States,* 232 U. S. 383, to be sure, had established that laying the papers directly before the grand jury was unwarranted, but it is taken to mean only that two steps are required instead

of one. In our opinion such is not the law. It reduces the fourth amendment to a form of words. (232 U. S. 393.) The essence of a provision forbidding the acquisition of evidence in a certain way is, that not merely evidence so acquired shall not be used before the court but that it shall not be used at all. Of course, this does not mean that the facts thus obtained become sacred and inaccessible. If knowledge of them is gained from an independent source they may be proved like any others, but the knowledge gained by the government's own wrong cannot be used by it in the way proposed. The numerous decisions like *Adams* v. *New York,* 192 U. S. 585, holding that a collateral inquiry into the mode in which evidence has been got will not be allowed when the question is raised for the first time at the trial, are no authority in the present proceeding, as is explained in *Weeks* v. *United States,* 232 U. S. 383."

The case of *Gouled* v. *United States, supra,* also holds that the taking, without force, from the house or office of one accused of crime of a paper belonging to him, of evidential value only, by a representative of any branch or subdivision of the government of the United States, is a violation of the fourth amendment to the constitution and the admission of such paper is a violation of the fifth amendment. In *Amos* v. *United States,* 255 U. S. 313, it is held that property seized in the search of a private home by government agents without a warrant of any kind, in plain violation of the fourth and fifth amendments of the constitution, should have been returned to the owner on his petition and should not have been received in evidence against him. Both these cases also hold that the rule in the *Adams case* that the courts will not stop the progress of the trial of a criminal case to inquire whether evidence offered, otherwise competent, was lawfully or unlawfully obtained, has no application where it becomes apparent during the trial that there has been an unconstitutional seizure of property of the accused, and the court should exclude

such property, and any testimony relating thereto given by the government agents who made the unlawful seizure, on motion of the accused made after both property and testimony were introduced in evidence against him. The same rule announced in these decisions of the Supreme Court of the United States has been announced and followed by the Supreme Courts of many of the States. *Atz* v. *Andrews,* 94 So. (Fla.) 329; *State* v. *Myers,* 211 Pac. (Idaho) 440; *Callender* v. *State,* 136 N. E. (Ind.) 10; *Youman* v. *Commonwealth,* 189 Ky. 152; *State* v. *Marxheusen,* 204 Mich. 559; *Tucker* v. *State,* 128 Miss. 211; *State* v. *Hyde,* 248 S. W. (Mo.) 920; *State* v. *District Court,* 59 Mont. 600; *Gore* v. *State,* 218 Pac. (Okla.) 545; *Hughes* v. *State,* 145 Tenn. 544; *Town of Blacksburg* v. *Bean,* 104 S. C. 146; *State* v. *Pridemore,* 116 S. E. (W. Va.) 756; *Hoyer* v. *State,* 193 N. W. (Wis.) 89; *Wiggins* v. *State,* 206 Pac. (Wyo.) 373.

There are many decisions of State courts which hold the evidence obtained by an illegal search and seizure, in violation of the constitutional right of the defendant, admissible in evidence against him. Many of them are based on the proposition that the court will not stop the trial to investigate the collateral issue as to the manner in which the evidence was procured, and follow the case of *Adams* v. *New York, supra,* in that particular. Others, however, take the ground that the court will not make any inquiry as to whether the constitutional right of the defendant has been violated, but will leave him to pursue such remedies as the law gives him against the officers or other persons who have committed the injury. We prefer to adhere to our own decisions and those of the Supreme Court of the United States and of the Supreme Courts of the States which agree with them, as founded upon the better reason.

In our country it has always been the rule that every person accused of crime must be proved guilty beyond a reasonable doubt before he can be convicted, and upon his

trial is entitled to the benefit of the presumption that he is innocent of the crime with which he is charged until he is proved guilty by the evidence beyond a reasonable doubt, and upon such trial the indictment is no evidence of his guilt. Our State constitution guarantees to every person charged with crime,—and it makes no distinction between the guilty and the innocent,—the right to a trial by a jury of twelve men, to be confronted by the witnesses against him, face to face, not to be compelled to give evidence against himself, and to be secure in his person, house, papers and effects against unreasonable search and seizure. The framers of the Federal constitution, as originally presented, did not include in it these provisions, but they were added on the demand of the States to which it was submitted for adoption. They were then deemed necessary for the protection of the individual against the oppressive action of the government, not only of the indefinite aggregation of authority which has its seat at the capital, but of every official who administers a part of the functions of government. They were adopted not to enable the guilty to escape the consequences of their crime nor only to be availed of by the innocent, but they were regarded as essential to the protection of every person against whom a charge of crime was made, from the arbitrary, tyrannical and unlawful conduct of the representatives of the government. A consideration of the origin, history and use of writs of assistance in England, of their use in this country, and the evolution of the fourth amendment to the Federal constitution, manifests the importance of this safeguard of the citizen against unreasonable searches and seizures of his person or property, and the necessity that it shall not be frittered away by the courts by a narrow and illiberal construction and a willing blindness and indifference to its violation. The language of the Supreme Court of Tennessee in *Hughes* v. *State, supra,* meets with our approval: "The State, having through its executive representatives produced the evidence

of a violation of the law by one of its citizens by means prohibited by the constitution, cannot be permitted, through its judicial tribunal, to utilize the wrong thus committed against the citizen to punish the citizen for his wrong, for it was only by violating his constitutionally protected rights that his wrong has been discovered. It is no answer to say that it matters not how a citizen's sins have been found out. Security from unlawful search is the right guaranteed to the citizen, even for the discovery of the citizen's sins. This right we must protect, unless we may with impunity disregard our oath to support and enforce the constitution. The experience of our forefathers with unlawful searches and seizures was deemed by the people who framed the constitution sufficient to warrant the provision by which, in instances, even the guilty might escape detection and punishment. We are not to be understood as holding that all evidence obtained by unlawful means is inadmissible, but only where, in cases such as we have here, the evidence offered has been produced by violating the constitutional protection against unlawful searches and seizures."

The plaintiff in error objects to the sufficiency of the second count of the information. No motion to quash it was made. The written motion in arrest of judgment set forth several distinct reasons for arresting the judgment, none of which questioned the sufficiency of the information. There is no assignment of error questioning the counts. In this condition of the record the objection is not before us for determination.

After the evidence had been heard and both sides had rested, the court permitted the People to introduce and examine Guy Holcomb, a witness who gave damaging testimony in chief, against the plaintiff in error's objection to his examination at that time. No excuse was shown for the failure to examine him when the People's other evidence in chief was introduced. The prosecution ought not, with knowledge of important testimony at its command, to close

its case without introducing it, and then, after the defendant has introduced his testimony, be permitted to open up its case anew and introduce evidence in chief which it could have produced at the proper time but withheld. The examination of this witness ought not to have been permitted without some reason shown for the failure to produce him while the People were introducing the evidence in chief.

On the trial the People introduced in evidence a bottle of wine which had been taken in the search of the plaintiff in error's home. He had been tried and found guilty in November, 1922, of possessing intoxicating liquor and testified that the wine was in his possession prior to his former conviction. He offered in evidence so much of the record of the former proceeding as showed that a jury was sworn and evidence heard upon a count charging him with unlawful possession of intoxicating liquor, limiting his offer to the sole purpose of showing former jeopardy. The People then offered so much of the remainder of the record as showed that he had been found guilty in the former proceeding, and it was admitted over his objection. It is contended that this was error. The error was in admitting a part of the former record on behalf of the plaintiff in error. The part of the record which he offered was not competent, alone, to show former jeopardy. Even after the jury had been sworn, the trial completed and the cause submitted to the jury, if for good cause, such as failure to agree or the sickness of a juror, the judge should discharge the jury without a verdict, the prisoner could not plead former jeopardy on a second trial for the same offense. *O'Donnell* v. *People,* 224 Ill. 218.

The judgment will be reversed and the cause remanded.

*Reversed and remanded.*

Mr. JUSTICE THOMPSON, dissenting:

Profound respect for the decisions of the Supreme Court of the United States and for the learning of my associates,

who agree with the decision in *People* v. *Brocamp, supra,* and the case at bar, tempts me to submit to their view, but I consider the question of evidence involved of such great public importance that I feel compelled to dissent, even at the risk of a charge of presumptuousness. I yield to no man in his reverence for the constitution nor his devotion to the cause of freedom of human action. I deplore the assaults on personal liberty by misguided individuals and over-zealous peace officers. I realize to its fullest extent the dangers lurking in the tendency to invade the field of personal liberty and to make our people the subjects of a government. Severe condemnation and vigorous prosecution of those clothed temporarily with governmental authority who violate the sanctity of the home meets with my hearty approval; but respect for the constitution cannot be established by returning contraband goods to those who scorn the constitution and who scoff at all law.

Section 6 of article 2 of our State constitution provides: "The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated; and no warrant shall issue without probable cause, supported by affidavit, particularly describing the place to be searched, and the persons or things to be seized." How can this plain and wholesome guaranty of our bill of rights be distorted to read: "No person or his house or effects shall be searched, or himself or things in his possession seized, except by virtue of a search warrant issued after a showing of probable cause supported by affidavit particularly describing the place to be searched and the person or thing to be seized?" If the writers of the State and the Federal constitutions had intended that there could be no lawful search and seizure without a warrant they would have said so. That they did not consider all searches and seizures made without a warrant unreasonable is manifest, because the constitution contains no prohibition against arrest, search or seizure without

a warrant. The common law, with which they were undoubtedly familiar, authorized arrests, searches and seizures without a warrant under certain circumstances, (*Cahill* v. *People,* 106 Ill. 621; 4 Blackstone's Com. 292; 1 Hale's Pleas to Crown, 587;) and being lawful they were reasonable. They are unreasonable only when there is in law a want of probable cause. If the officer has personal knowledge of the probable cause he does not need the affidavit of some other person to advise him. To hold no accused or suspected person can be arrested and searched for tokens of crime without a' warrant would be to leave society at the mercy of the shrewdest criminals. The section is aimed at the use of general warrants issued without a showing of probable cause, which describe neither the place to be searched nor the person or thing to be seized. It protects the citizen from an unreasonable search in any case, whether with or without a warrant, and requires that when warrants are issued they shall be specific as distinguished from general.

With this brief explanation of the purpose of the constitutional provision I pass to the real question in issue: Is an article seized without a search warrant inadmissible in evidence notwithstanding its admitted relevancy to the issue? This is a simple question of evidence and ought not to be confused with a discussion wholly foreign to principles of evidence. Conceding, for the purpose of the discussion to follow, that the liquor in question was illegally seized, I undertake to demonstrate the fallacy of the Federal rule which this court now adopts.

Greenleaf says (vol. 1,—15th ed.—sec. 254*a*) : "Though papers and other subjects of evidence may have been illegally taken from the possession of the party against whom they are offered, or otherwise unlawfully obtained, this is no valid objection to their admissibility if they are pertinent to the issue. The court will not take notice how they were obtained,—whether lawfully or unlawfully,—nor will

it form an issue to determine that question." Prior to the
decision in *People* v. *Brocamp, supra,* this court had held
in an unbroken line of decisions that the admissibility of
evidence is not affected by the illegality of the means by
which the evidence was obtained. (*Stevison* v. *Earnest,*
80 Ill. 513; *People* v. *Paisley, supra.*) The rule is·sup-
ported by the great weight of authority. (Wigmore on
Evidence,—2d ed.—sec. 2183; 8 R. C. L. 196; 10 id. 932;
Annotation, 24 A. L. R. 1408.) The unlawful act of pro-
curing the evidence is not condoned; it is merely ignored.

The soundness of this rule of evidence was never
doubted until contrary dicta appeared in *Boyd* v. *United
States, supra,* decided in 1885. The sole question to be
decided in that case was whether a certain statute, and
order of court entered pursuant thereto, which, in effect,
compelled a defendant to furnish evidence against himself,
were violative of the privilege guaranteed by the fifth
amendment to the Federal constitution. In the decision of
that question the guaranty of the fourth amendment against
unreasonable search and seizure was confounded with the
question at issue, and a large part of the opinion is devoted
to a discussion of this question, which was not at all in-
volved. In 1904 the Federal Supreme Court, in the *Adams
case,* repudiated the *obiter dicta* of the *Boyd case* and de-
clared the rule as stated by Greenleaf to be the true rule.
In discussing the right of the prosecution to use in evi-
dence articles illegally seized it was said: "In such cases
the weight of authority, as well as reason, limits the inquiry
to the competency of the proffered testimony, and the
courts do not stop to inquire as to the means by which the
evidence was obtained." Authorities holding that the court
will not form an issue to determine this collateral question
were cited and quoted with approval. The *Adams case*
was approved in *Hale* v. *Henkel,* 201 U. S. 43, and *Holt*
v. *United States,* 218 id. 245. This remained the rule for
ten years, and then the Supreme Court held in the *Weeks*

*case* that where a motion is made, before the opening of the trial, for the return of the property illegally seized, it must be returned and cannot be received in evidence. Seven years later, in the *Gouled case,* the court returns to the construction placed on the fourth amendment to the Federal constitution announced in the *Boyd case* and holds that evidence illegally obtained is not admissible. In the *Gouled case* the court goes further and holds that all searches and seizures without a warrant are unreasonable. No authority is cited for this holding, and I think none can be found. It is contrary in principle to the holding in *Stroud* v. *United States,* 251 U. S. 15, that letters written by a prisoner and handed to the keeper for mailing can be seized and used as evidence against him.

In the *Weeks case* the general rule that the court will not interrupt the orderly trial of a cause to try a collateral issue was recognized, but it was said that the court would inquire into the method of procuring the evidence if a petition properly presenting the question were filed with the court before the trial began. Thus the defendant's constitutional right to be protected from unlawful search and seizure was made to depend upon his raising the question in a particular way at a specified time. Can it be that the protection of a citizen's constitutional rights is dependent upon a mere rule of practice? Is the clever crook, or the one able to hire skilled counsel, who knows just when and how to raise the question, to be protected, while the amateur lawbreaker or the innocent victim unfamiliar with court procedure loses his rights under the constitution because he did not proceed thus and so? The court fails to make clear how a collateral fact is made material by the specified procedure. The question of illegality of method in obtaining evidentiary materials is collateral to the main issue, and motions without number will not make it anything else. In the *Gouled case* the court went further, and held that the fact that evidentiary materials had been illegally seized by

a Federal officer could be shown at any time the evidence was offered.

In the *Weeks case,* and in *Burdeau* v. *McDowell,* 256 U. S. 465, it was held that evidence illegally seized was inadmissible only when the illegal seizure was made by a Federal officer. Evidence seized by city police officers and private citizens was received in evidence on the ground that the government was not bound by their acts. That the inadmissibility of evidence can be made to depend upon the antecedent and wholly unrelated fact that the unreasonable search by which it was unlawfully obtained was made by a petty Federal officer instead of by a city policeman or a private individual is not founded in reason or law. The policeman takes substantially the same oath to uphold the law of the land that the Federal peace officer takes. If it is the purpose of the rule to protect the outraged citizen he is entitled to the protection under one situation as much as under the other. The unsoundness of the rule rests in the erroneous assumption that the people are bound by the wrongful acts of public police officials employed by their government and that the people are to be punished for those acts by the court's refusing to receive evidence illegally obtained. Professor Wigmore illustrates the result of the rule this way: "Titus, you have been found guilty of conducting a lottery; Flavius, you have confessedly violated the constitution. Titus ought to suffer imprisonment for crime and Flavius for contempt. But no! We shall let you *both* go free. We shall not punish Flavius directly but shall do so by reversing Titus' conviction. This is our way of teaching people like Flavius to behave and of teaching people like Titus to behave, and incidentally of securing respect for the constitution. Our way of upholding the constitution is not to strike at the man who breaks it, but to let off somebody else who broke something else." (Wigmore on Evidence,—2d ed.—sec. 2184.)

Many State Supreme Courts of first rank have refused to follow the Federal rule, but we shall quote from only a few of them. In *Commonwealth* v. *Wilkins,* (Mass.) 138 N. E. 11, after full consideration of the question it is said: "We are unable to assent to the distinctions established by the Federal decisions. The presentation of evidence in court in prosecution of crime is by the district attorney, who for that purpose is the representative of the government. He, alone, decides what evidence shall be offered. It seems to us that whether physical property seized through an unreasonable search should be received in evidence when presented by the government attorney cannot soundly depend upon the antecedent and disconnected fact that the unreasonable search by which it was unlawfully obtained was made by a police officer without any warrant instead of by a private individual acting on his own responsibility. The decisions of the United States courts and all other courts appear to be unanimous in holding that in the latter instance property will be admitted in evidence, if otherwise competent, against the owner on trial for a crime. We prefer to adhere to our rule, which makes the competency of evidence depend upon its inherent probative value rather than upon outside circumstances, and which leaves the redress of grievances for invasion of constitutional rights to the usual and adequate provisions of the civil and criminal law."

In *People* v. *Mayen,* (Cal.) 205 Pac. 435, we find this significant language: "The constitution and the laws of the land are not solicitous to aid persons charged with crime in their efforts to conceal or sequester evidence of their iniquity. From the necessities of the case the law countenances many devious methods of procuring evidence in criminal cases. The whole system of espionage rests largely upon deceiving and trapping the wrongdoer into some involuntary disclosure of his crime. It dissimulates a way into his confidence. It listens at the keyhole and peers

through the transomlight.  It is not nice, but it is necessary in ferreting out the crimes against society, which are always done in darkness and concealment.  Thus it is that almost from time immemorial courts engaged in the trial of a criminal prosecution have accepted competent and relevant evidence without question and have refused to collaterally investigate the source or manner of its procurement, leaving the parties aggrieved to whatever direct remedies the law provides to punish the trespasser or recover the possession of goods wrongfully taken."

The Supreme Court of Iowa, in *State* v. *Tonn,* 191 N. W. 530, after a full re-investigation of the question, repudiated the rule established by the Federal courts, saying: "The due administration of the criminal law would be seriously hampered, and in many cases entirely subverted, by a strict adherence to this rule.  We would not detract one iota from the full protection vouchsafed to the citizen by the constitutional provisions.  A trespassing officer is liable for all wrong done in an illegal search or seizure.  The constitutional provision is a sacred right and one which the courts will rigidly enforce, but that does not mean that the State, in the prosecution of crime, cannot use any proper evidence available to it without stopping to conduct an independent inquiry in the criminal proceeding as to how that evidence was obtained.  Great public interests are involved in the due and efficient prosecution of crime.  The vital question is whether or not the evidence is competent and relevant to the issue on trial."

In *Lawrence* v. *State,* 103 Md. 17, 63 Atl. 96, police officers had taken from the satchel of the defendant certain documents, and he objected to the receiving of them in evidence on the ground that they were taken from him in violation of his constitutional right to security from unlawful search and seizure of his property, and that the production of them in evidence was, under the circumstances, a compulsion upon him to give evidence against himself.  The

court disposes of this contention, saying: "It would seem upon reason and the great preponderance of authority that the manner in which the State secured control of these articles did not make them inadmissible in evidence upon the ground last referred to. The true effect of the constitutional provisions here invoked against the admissibility of the evidence in question has been declared by the courts to be that they are inhibitions upon governmental action, and intended to prohibit legislation that may be oppressive to the citizen by subjecting him to vexatious and unreasonable search and seizure of his property, and compelling him, when accused of crime, to give evidence against himself, as also to restrain the courts from making use of their process to vex and oppress him in like manner; that they have no application to the irregular and unlawful acts of individuals."

The Supreme Court of Kansas in *State* v. *Turner*, 82 Kan. 787, 109 Pac. 654, declares that "the rule authorizes the use as evidence not only of articles taken by force, but also of those which the defendant has been coerced into delivering. The manner of their procurement, however reprehensible, will not prevent their use as evidence so long as the person against whom they are used has not been constrained by the court to procure them. A document that has been taken stealthily from the defendant's desk or forcibly from his pocket, or that he has surrendered under a threat of personal violence, may be used against him, because its wrongful procurement creates no estoppel, and the story it tells is its own and not that of the defendant."

In *State* v. *Barela,* 168 Pac. 545, the Supreme Court of New Mexico states the general rule to be, that "the admissibility of evidence is in no way determined or affected by the manner in which or the means by which it is obtained. If it is otherwise competent and relevant to the issues in the case it is admissible, and does not violate either the

constitutional guaranty against unlawful searches and seizures or against involuntary self-incrimination.  *  *  *
The provision against unreasonable searches and seizures refers to searches and seizures by the government through legislative or judicial sanction and not to the private acts of individuals. The provisions against self-incrimination are limited to testimonial compulsion under process of some kind directed against the defendant as a witness. It does not and cannot logically apply to actions of the defendant under compulsion of persons or officers without judicial sanction. In such cases the physical facts speak, not the defendant as a witness."

In *State* v. *Chuchola,* (Del.) 120 Atl. 212, police officers without a proper search warrant searched the residence of the defendant and seized certain intoxicating liquors. In denying a petition to return the seized articles and holding it proper to use them as evidence the court said: "It is difficult to see any constitutional connection between the illegal seizure and the use of the thing seized as evidence. The act the constitution prohibits is the seizure,—not the use of the article seized. The violation of the constitutional provision would seem to be complete when the seizure is made, and in that case the only remedy or redress the wronged party has is an action against the wrongdoer,—the person who made the seizure.  *  *  *  The denial of the use in evidence of articles illegally seized might discourage, and to a great extent prevent, illegal seizures, but it does not seem to us to be a sufficient reason for excluding such evidence at the trial. If a man's property is seized without a warrant,—illegally seized,—the person making the seizure can be and ought to be punished for his unlawful act, but such acts should not prevent the use of the thing seized in evidence, and certainly not if its possession constituted the crime charged."

In *State* v. *Krinski,* 62 Atl. 37, the Supreme Court of Vermont says, that however the Federal rule may be re-

311—27

garded, "there is a plain distinction between the seizure and production of papers which are not the basis of the charge and are merely of an evidentiary character, and the seizure and production of property kept for an illegal use," and holds that the trial court properly refused to inquire into the legality of the seizure of intoxicating liquor offered as evidence in a prosecution for its unlawful possession. To the same effect are *Rosanski* v. *State,* 106 Ohio St. 442, 140 N. E. 370, and *State* v. *Simmons,* 183 N. C. 684, 110 S. E. 591.

To quote at length from the scores of decisions which adhere to the same rule of evidence would unnecessarily lengthen this opinion. It is all-sufficient to say that practically all the States have adopted and repeatedly approved the rule. A few of the decisions declaring against the Federal rule, in addition to those hereinbefore cited, are *Banks* v. *State,* 207 Ala. 179, 24 A. L. R. 1359; *Venable* v. *State,* (Ark.) 246 S. W. 860; *State* v. *Magnano,* 97 Conn. 543, 117 Atl. 550; *Johnson* v. *State,* 152 Ga. 271, 19 A. L. R. 641; *State* v. *Burroughs,* 72 Me. 479; *State* v. *Hesse,* (Minn.) 191 N. W. 267; *Billings* v. *State,* (Neb.) 191 N. W. 721; *State* v. *Pauley,* (N. D.) 192 N. W. 91; *State* v. *Agalos,* 79 N. H. 241, 107 Atl. 314; *People* v. *Adams,* 176 N. Y. 351, 68 N. E. 636, (aff. 192 U. S. 585, 24 Sup. Ct. 372;) *Knight* v. *State,* 16 Okla. Crim. 298, 182 Pac. 734; *State* v. *Ware,* 79 Ore. 367, 154 Pac. 905; *State* v. *Atkinson,* 40 S. C. 363, 18 S. E. 1021; *State* v. *Madison,* 23 S. D. 584, 122 N. W. 647; *Welchek* v. *State,* (Texas) 247 S. W. 524; and *Lucchesi* v. *Commonwealth,* 122 Va. 872, 94 S. E. 925. This view is further supported by the decisions of eleven more courts, (*Imboden* v. *People,* 40 Colo. 142, 90 Pac. 608; *State* v. *Anderson,* 31 Ida. 514, 174 Pac. 124; *People* v. *Campbell,* 160 Mich. 108, 125 N. W. 42; *Pringle* v. *State,* 108 Miss. 802, 67 So. 455; *State* v. *Pomeroy,* 130 Mo. 489, 32 S. W. 1002; *State* v. *Fuller,* 34 Mont. 12, 85 Pac. 369; *Knight* v. *State,* 16 Okla.

Crim. 298, 182 Pac. 734; *State* v. *Atkinson*, 40 S. C. 363, 18 S. E. 1021; *Cohn* v. *State*, 120 Tenn. 61, 17 L. R. A. (N. S.) 451; *State* v. *Royce*, 38 Wash. 111, 80 Pac. 268; and *State* v. *Edwards*, 51 W. Va. 220, 59 L. R. A. 465;) but in later decisions these courts follow the Federal rule. There are but four more States to be added to those approving the Federal rule: Indiana, Kentucky, Wisconsin and Wyoming. It may be safely said that no State court of last resort on its own judgment, independent of the influence of the Federal cases, holds contrary to the rule announced in this dissent, and the decisions of the Supreme Court of the United States are in conflict on the question.

The suggestion that the court will halt a trial to determine whether a confession is voluntary before it will receive evidence of it is entirely beside the point. Involuntary confessions are rejected not because of the illegal or deceitful methods employed in securing them but because of their unreliability. The rule is thus stated in *Commonwealth* v. *Morey*, 1 Gray, 461: "The ground on which confessions made by a party accused, under promises of favor or threats of injury, are excluded as incompetent, is not because any wrong is done to the accused in using them, but because he may be induced, by the pressure of hope or fear, to admit facts unfavorable to him, without regard to their truth, in order to obtain the promised relief or avoid the threatened danger, and therefore admissions so obtained have no just and legitimate tendency to prove the facts admitted." In *People* v. *McMahon*, 15 N. Y. 384, the rule that such confessions are excluded on the ground of their want of reliability is thus stated: "The principle upon which this rule is based is obvious. It is, that we cannot safely judge of the relation between the motives and the declarations of the accused when to the natural agitation consequent upon being charged with crime is superadded the disturbance produced by hopes or fears artificially excited. It is because it is in its nature unreliable, and not

on account of any impropriety in the manner of obtaining it, that the evidence is excluded. In this all the authorities agree. Mr. Phillips, speaking on this subject, says: 'A confession so obtained cannot be received, on account of the uncertainty and doubt whether the prisoner might not have been induced, from motives of fear or interest, to make an *untrue statement.*'" In *State* v. *Carrick,* 16 Nev. 120, it is said that it is only when the wrongful acts "exercise such an influence over the mind of the accused as to induce him to state things that are not true, that will authorize the courts to exclude the confession or admission. The law in its general application to this question, as well as others, is founded in reason and common sense. Its object is to ascertain the truth, and it is not its purpose to reject any reliable and competent means of attaining it." Greenleaf says: "The object of all the care which is taken to exclude confessions which were not voluntary is to exclude testimony not probably true." Wigmore says: "The principle, then, upon which a confession may be excluded is that it is under certain conditions testimonially untrustworthy." In *State* v. *Turner, supra,* the Supreme Court of Kansas says: "Extorted confessions are not excluded as a rebuke to those who have obtained them, but because they are regarded as of doubtful credibility."

Without further extending this division of the opinion, I cite in support of the foregoing, *Roesel* v. *State,* 62 N. J. L. 216, 41 Atl. 408; *State* v. *Willis,* 71 Conn. 293, 41 Atl. 820; *People* v. *Wolcott,* 51 Mich. 612, 17 N. W. 78; *State* v. *Novak,* 109 Iowa, 717, 79 N. W. 465. This principle of testimonial untrustworthiness being the foundation of exclusion, it follows that the exclusion is not rightly rested on the privilege against self-incrimination and other plausible theories. (2 Wigmore on Evidence,—2d ed.— sec. 823.) The rule is settled that notwithstanding the inadmissibility of the confessions, all facts discovered in consequence of the information given by the accused, and

which go to prove the existence of the crime of which he is suspected, are admissible as evidence. *Gates* v. *People,* 14 Ill. 433; 2 Wharton on Crim. Evidence,—10th ed.—1398; 2 Bishop's New Crim. Proc.—2d ed.—1061; 3 Ency. of Evidence, 341.

The Federal courts go still further, and hold that the admission, over the objection of the accused, of evidentiary articles seized without a search warrant is in violation of the fifth amendment to the Federal constitution, because it is, in effect, compelling the accused to testify against himself. The fifth amendment states that the accused shall not be compelled in any criminal case to be a witness against himself,—that is, he is privileged from taking the witness stand and submitting to examination by the court or the prosecuting attorney. He is privileged from producing evidence against himself but not from its production. (*Johnson* v. *United States,* 228 U. S. 457; *State* v. *Flynn,* 36 N. H. 64.) Instruments of crime and fruits of crime speak for themselves, and there is nothing in the constitution nor in the historical background of the constitutional provisions under consideration to prevent these mute witnesses from testifying against their criminal associates. If the production of articles of evidentiary value which have been seized without a search warrant amounts to compelling the accused to be a witness against himself, then the production of the same articles seized under a search warrant is in violation of the fifth amendment. The result is exactly the same to the one accused. In either case he is the unwilling source of the evidence. The most casual examination of the history of this provision found in the constitution of the United States and of forty-six of the States shows that the privilege is personal. The extreme brevity of the clauses naming the privilege is plain proof of an intention to recognize, and not create, the privilege. There is no attempt to codify the various details of the rule or

to alter in any respect the scope of the privilege as already understood, accepted and judicially developed at the time the several constitutions were adopted. The rule was the natural outgrowth of the opposition to the practice of compulsory disclosure, and especially to the abuse of the inquisitorial powers of the prosecuting officers and judges. For an enlightening discussion of the history of the development of this privilege see Wigmore on Evidence, (2d ed.) sections 2250 to 2252. There is no more reason for excluding the story which evidentiary articles can tell, if their story is relevant, than for excluding the story of persons discovered and brought into court notwithstanding the effort of the accused to conceal them. If the accused concealed in his house a person having knowledge of his crime, and the officers, without a warrant, searched the house, found the witness and forcibly presented him in court, would the witness be incompetent? Would the court require that the witness be returned to the accused? That these questions must be answered in the negative seems too plain for argument. Then why return a still, or counterfeiter's tools, or gambling implements, or stolen goods seized without a search warrant? They have a story to tell, and it is relevant; and more, it is true. Without extending this division of my discussion further, I say the holding that the production of contraband articles seized from the accused without a search warrant is compelling the accused to be a witness against himself is without foundation in fact, in reason or in law.

The object of the constitutional guaranty against unlawful search and seizure is to protect the citizen from domestic disturbance by disorderly intrusion by irresponsible administrative officials. The provision implies a remedy in the courts, and it is a slander of our much-boasted American justice to say that the remedy is not to be had if it is sought. Positive refutation of such unjustified slander is found in the reports of decisions in every jurisdiction in

the United States. Civil damages have been awarded aggrieved persons and the offending officials have been fined and imprisoned. The fallacy of the doctrine of the Federal courts is in assuming that constitutional rights of the defendant are violated by using his private papers and property as evidence against him, whereas it is the invasion of his premises and the taking of his goods that constitute the offense, irrespective of what is taken or what use is made of it. The return of the property is nowhere guaranteed in the constitution. The injury occasioned by the unlawful intrusion is not redressed by a mere return of the property unlawfully seized. For a court to refuse to receive evidence relevant and otherwise admissible because it was unlawfully procured is to seek to right one wrong by committing another. Is it possible that property unlawfully seized must be returned to the person from whose possession it was taken regardless of the character of the property? Must a court compel police officers to return bombs and dangerous explosives seized in an anarchists' den because the anarchists did not invite the officers to visit their den and did not voluntarily deliver to them the instrumentalities by which they intended to destroy the property of the State and to kill all public officials, including the judge who must order the articles returned and the police who seized them? Must an officer who finds a cache of stolen property procure a search warrant before he can seize the property? How is he to particularly describe the "things to be seized" before he sees them? The rule seems to be universal that where a defendant is personally searched at the time of his arrest, the property taken from him which is in any way connected with the crime charged or which may serve in identifying the prisoner may be used in evidence against him on the trial. Why is it not equally admissible when seized a few minutes after his arrest although not in his actual presence? It is just as germane to the question being tried. A dwelling house may be a man's

castle, but it is also possible that it is a thieves' den or a robbers' rendezvous. A man's house is no more sacred than his person, and if his person can be searched so can his house. The constitution does not prohibit all searches and seizures but only those which are unreasonable. If the search is unreasonable and unlawful he has his remedy, but the reasonableness or lawfulness of the search cannot be determined without making an issue of that fact in a proper proceeding. The law provides a remedy for any wrong done, and the complaining citizen should be referred to that remedy. The return of the property with due apologies for the outrage cannot be made a substitute for the action for damages. If the court is of the opinion that the prosecuting attorney is in conspiracy with the offending officers and that he will not prosecute them, it should exercise its right to appoint a special prosecutor to see that the law is vindicated and not undermine the foundations of our judicial system by refusing to receive relevant and competent evidence in a criminal or civil proceeding.

The purpose of the constitutional guaranty is to protect the citizen from governmental action. Its origin and history clearly show that it was intended as a restraint upon the activities of sovereign authority and was not intended to protect the citizen from trespasses of individuals. The constitutional provision is a safeguard to protect the intimate sanctity of the person and the home from invasion by the State. The purpose is to provide against any attempt, by legislation or judicial order, to authorize, justify or declare unlawful any unreasonable search or seizure. *Gindrat* v. *People, supra; Burdeau* v. *McDowell, supra; People* v. *Mayen, supra.*

In the case at bar the State has not by legislative act nor by judicial order attempted to make lawful an unreasonable search and seizure. The question of the legality of the search of the dwelling house of plaintiff in error

was collateral to the question, Did he possess for a pro-hibited purpose intoxicating liquor?—and this collateral fact could not be turned into a material fact merely by making a formal motion before trial. The court properly denied the request of plaintiff in error to return to him the contraband liquor seized and properly overruled the objection to its admission in evidence.