THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* FRANK DEWEY HARDEN, Defendant-Appellant.

(No. 71-214;

Second District—June 28, 1972.

Ralph Ruebner, of Defender Project, of Elgin, (Kenneth L. Gillis, of counsel,) for appellant.

Jack Hoogasian, State's Attorney, of Waukegan, for the People.

Mr. JUSTICE ABRAHAMSON delivered the opinion of the court:

Defendant appeals from a revocation of probation and the imposition of a sentence of not less than five nor more than ten years in the state penitentiary.

Prior thereto defendant was indicted for theft of property over $150 (one 19" Magnavox television set) and the Public Defender was assigned to represent him. He pleaded guilty and was placed on probation for three years, the first year to be served in the county jail, and the defendant to be admitted to the Work Release Program after the first three months thereof. One of the stated conditions of his probation was that he shall not violate any penal statute or ordinance of any jurisdiction. On January 5, 1970, at about 8:30 A.M. he was released to the program to procure employment. He stayed away until January 6 at 2:00 A.M. when he was re-arrested.

The amended petition for revocation alleged, among other things, that defendant violated one of the conditions of his probation in that he (a) knowingly and with intent to commit theft of over $150 exerted unauthorized control over a 1965 Ford Mustang automobile by taking the keys, entering the automobile, starting the motor, and attempting to leave with the automobile, and thus committed a substantial step toward the commission of theft; (b) obtained unauthorized control over a .22 caliber revolver; and (3) failed, after he became eligible for the Work Release Program, to return to the county jail by 5:00 P.M. on January 5 as directed, but stayed away all night until apprehended on January 6 at 2:00 A.M.

The record shows that when defendant was released on January 5 to procure employment he filed an application for a job with an employer and was to return there the following day for a physical examination. At 6:30 or 7:00 P.M. on that day he met a long-time friend, one Charles Owens, returned to his friend's apartment, had dinner with Owens and his wife, and decided to spend the night there. After Mr. and Mrs. Owens retired to their bedroom about 9:00 P.M. Owens discovered that his loaded revolver was not in its usual place, his dresser. After he, his wife, and defendant searched the apartment in vain for it, Owens telephoned the police. When the police arrived, Owens filled out a report and the police left. In response to Owens' questioning, after the police had left, defendant denied stealing the gun. They all then retired.

About 2:00 A.M. on January 6 Owens got up from his bed, heard a door slam, went to the back door and saw defendant backing Owens' car from its parking place. Owens threw a bag of ice at the car and asked defendant what he was doing. Defendant said he was going back to jail. Owens told him to come back into the house, which defendant did. Owens then went to the car to get the keys out and saw a bag of clothing which he had given defendant. He took the bag out and when he reached into it, he found the missing loaded gun. Owens called the police again, who came and arrested the defendant.

Before the police took him away, defendant handed Owens an unstamped, addressed envelope, and asked him to mail it. Instead, Owens opened the envelope, found two letters, one addressed to defendant's brother and the other to a woman friend. Owens later handed the envelopes containing these letters to an officer. At the hearing the letters were received in evidence over defendant's objection. The letter to his brother was written on January 5 and the one to his friend was dated and written January 3. In the letter to his brother he said, among other things, that he was "leaving up here" on the 5th and would have to "Lay

low for Awhile because Illions [sic] will be looking for me." He made statements of similar import in the other letter.

At the conclusion of the hearing defendant was found to have violated the conditions of his probation. Probation was revoked and the judge imposed a sentence of not less than five nor more than ten years in the penitentiary.

██ Defendant argues that it was a denial of due process for the revocation hearing to be conducted before the same judge who had admitted him to probation. No such objection was made prior to nor at the revocation hearing, and there is nothing in the record to show any bias or prejudice on the part of the trial judge. As stated in *People v. Price*, 24 Ill.App.2d 364, 375, one of the cases on which defendant relies:

"The jurisdiction of the trial court which has admitted a defendant to probation, to entertain an application, either oral or written, to revoke the previous order admitting a defendant to probation cannot be questioned."

Defendant further contends that his constitutional rights were abridged by assigning to him inadequate and incompetent counsel. His principal criticism relates to the admission of the letters into evidence. His counsel concedes in his brief that the admission of these letters was objected to by the Public Defender on grounds of irrelevancy and invasion of his right to privacy, but urges that counsel should have added the objection that they were hearsay. In his brief defendant's counsel concedes that there were statements in the letters "which would tend to support the assumption that the defendant was about to flee the jurisdiction", but urges that they constituted hearsay statements as to defendant's intent. Thus, counsel in effect acknowledges their relevance to defendant's motive in taking the car keys and attempting to leave with the car while his hosts were sleeping. This court held in *People v. Richards*, 120 Ill.App.2d 313, 336, that while the State is not required to prove a motive for a deliberate act, its presence is important in considering whether defendant did commit the act. In *People v. Ruel*, 120 Ill.App.2d 374, 379, the court stated:

"Generally, the test of admissibility of evidence is whether it fairly tends to prove the particular offense charged, and circumstances may be put in evidence which tend to make the proposition at issue either more or less probable."

The letters, of course, indicate that defendant was planning to flee and thus negated his testimony that he was intending to return to jail with Owens' car and loaded revolver. In *People v. Garrett*, 49 Ill.App.2d 296, 301, the court said:

"Such recent, exclusive and unexplained possession of stolen property may in and of itself prove guilt beyond a reasonable doubt and it is within the province of the trier of fact to disbelieve the defendant's explanation of his possession."

■■ Moreover, the letters were received in evidence as admissions against interest of the writer of the letters, namely, the defendant, and the hearsay rule is inapplicable. See *People v. Cook*, 33 Ill.2d 363, 370; *California v. Green*, 399 U.S. 149.

■■ The admission of these letters was not an invasion of defendant's right of privacy. The envelope was not stamped nor deposited in the U.S. mail. Instead, it was handed by defendant himself to his friend and host, Owens, for mailing. It was Owens who, instead of putting postage on the envelope and mailing it, opened the envelope, read the letters, and then handed them over to the police. The State did not invade defendant's right of privacy and the court properly admitted defendant's letters in evidence. See *Gindrat v. People*, 138 Ill. 103, 106—7; *People v. Castree*, 311 Ill. 392, 397; and *People v. Touhy*, 361 Ill. 332, 347.

■■■ None of the arguments as to the inadequacy or incompetency of defendant's counsel are sustained by the record. It may be well in this connection to bear in mind the statement of the court in *U.S. ex rel. Feeley v. Ragen*, (7th Cir.) 166 F.2d 976, 980—1, which was quoted with approval in *People v. Washington*, 41 Ill.2d 16, 22:

"The best of counsel makes mistakes. His mistakes, although indicative of lack of skill or even incompetency, will not vitiate the trial unless on the whole the representation is of such low caliber as to amount to no representation and to reduce the trial to a farce."

As indicated above the evidence here is clear that, while defendant's friends, Owens and his wife, were asleep defendant took Mrs. Owens' car keys, went out to the car with a bag of clothes which Owens had given him, and started to drive off until he was stopped by Owens. It is also clear that in that bag was Owens' loaded revolver.[1]

Defendant further argues that his constitutional and statutory rights were abridged because one of the charges in the petition for revocation set forth defendant's failure to return to the county jail by 5:00 P.M. on January 5th as if that were a condition of probation, whereas there was

---

[1] It may be appropriate to observe in passing that the defendant, as one who had been recently convicted of a felony, having a loaded firearm in his possession committed the offense of unlawful possession thereof in violation of Illinois Revised Statutes 1969, chapter 38, section 24—3.1.

no such express condition imposed in the probation order. The State urges that the statutory provisions for the Work Release Program (Ill. Rev. Stat. 1969, ch. 75, sec. 35, *et seq.*) permitting a provision that a prisoner "may leave the county jail * * * during necessary and reasonable hours" for "seeking employment" or "working at his employment", is in *pari materia* with the Probation Statute and need not be copied at length in the order of commitment. In view of our holding that the trial judge was justified in revoking probation, we do not deem it necessary to consider this point.

■■ Finally, defendant contends that his sentence was excessive. This contention is without basis. The trial judge has wide discretion in determining what sentence to impose. Upon revocation of a probation the defendant should be sentenced for the original crime for which he had been convicted and not for any delinquency which caused revocation of probation. (*People v. Ford*, 4 Ill.App.3d 291, 292—3.) Nevertheless, the trial court cannot close its eyes to defendant's actions while on probation and causing the court to lose confidence in defendant's rehabilitation possibility. (*People v. Ward*, 4 Ill.App.3d 631, 633.) Should defendant have the desire to do so, he will have ample opportunity to avail himself of the rehabilitation and educational programs offered by the State. (See *People v. Hubbard*, 107 Ill.App.2d 79, 84.) The trial judge imposed a sentence within the statutory limits and did not abuse his discretion.

Accordingly, the judgment is affirmed.

Judgment affirmed.

T. MORAN and GUILD, JJ., concur.